IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CONSOLIDATED RAIL CORPORATION**
2001 Market Street
Philadelphia, PA 19103

                                  Plaintiff,

                         v.

**GERARD A. RITTER AND SUSAN R. NOREK,**
**Executors for the Estate of GERARD H.**
**RITTER, deceased**
908 South Webster Avenue
Scranton, PA 18505

                             Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 07-

## COMPLAINT FOR DECLARATORY RELIEF

       Consolidated Rail Corporation ("Conrail"), by and through its undersigned

counsel, brings this action for Declaratory Relief in order to stay the action of defendants Gerald

A. Ritter and Susan Norek filed in the Court of Common Pleas of Philadelphia County,

Pennsylvania, and to invoke this Court's original and exclusive jurisdiction as the successor to

the Special Court-Regional Rail Reorganization Act over matters concerning claims of successor

liability asserted against Conrail. In support thereof, Conrail avers as follows:

### THE PARTIES

       1.     Plaintiff Conrail is a corporation organized under the laws of the

Commonwealth of Pennsylvania pursuant to Section 301 of the Regional Rail Reorganization

Act of 1973, as amended ("Rail Act", 45 U.S.C. § 701 *et seq*.), and has its principal place of

business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

2.      Defendants Gerard A. Ritter and Susan R. Norek ("Defendants") are Executors of the Estate of Gerard H. Ritter (hereinafter "Decedent"). Defendants are residents of Pennsylvania.

### JURISDICTION

3.      This Court has original and exclusive jurisdiction over this action by virtue of Sections 209(e) and 209(g) of the Rail Act, 45 U.S.C. § 719(e), (g), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

### THE PENNSYLVANIA ACTION

4.      On June 8, 2005, the Decedent and his wife, Alice Ritter, filed a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania (*Ritter v. Garlock, Inc., et al.*, No. 050600467) (hereinafter the "Pennsylvania Action") against numerous defendants, including Conrail. Defendants allege that during the course of Decedent's employment with the Delaware Lackawanna and Western Railroad and the Erie Lackawanna Railroad Company (hereinafter "Erie Lackawanna"), Decedent was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (hereinafter "FELA"). Defendant's complaint in the Pennsylvania Action is attached hereto as Exhibit A.

5.      The Pennsylvania Action seeks to impose successor liability on Conrail in connection with decedent's employment with Erie Lackawanna, by virtue of the erroneous belief that Conrail is the legal successor-in-interest to Erie Lackawanna and is therefore liable for any injuries arising from Decedent's employment with Erie Lackawanna.

### THE RAIL ACT AND THE CONVEYANCE OF ERIE LACKAWANNA'S ASSETS TO CONRAIL

6.      Conrail was created as a federally-funded takeover of the major railroad companies in the Northeast through the Rail Act, 45 U.S.C. § 701, *et seq.*

7.     Pursuant to Section 206 of the Rail Act, 45 U.S.C. § 716, the United States Railway Association ("USRA") developed the Final System Plan ("Plan") in which it designated that certain assets of Erie Lackawanna and other Northeast railroad companies were to be transferred to Conrail.

8.     Pursuant to Section 209(c) of the Rail Act, 45 U.S.C. § 719(c), the USRA certified to this Court the rail properties of Erie Lackawanna designated in the Plan were to be conveyed to Conrail.

9.     Pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743, this Court issued a Conveyance Order filed March 25, 1976 ("Conveyance Order") directing the trustees of Erie Lackawanna to execute documents, effective April 1, 1976, conveying certain of Erie Lackawanna's rail properties to Conrail "free and clear of any liens or encumbrances" under Section 303(b)(2) of the Rail Act, 45 U.S.C. § 743(b)(2).  The Conveyance Order is attached hereto as Exhibit B.

10.     This Court has reinforced Congress's intent in declaring that the Rail Act provided Conrail with a legal and financial "fresh start" to commence a financially viable railroad operation. *See Penn Central Corp. v. United States*, 862 F. Supp. 437, 446 (S.C.R.R.R.A. 1994); *Consolidated Rail Corp. v. Commonwealth of Pa., Dep't of Gen. Svcs.*, No. 97-RR-01 (CRW) (D.D.C. 1997), attached hereto as Exhibit C.

11.     In light of the Rail Act's "fresh start" policy, this Court has concluded that the conveyance shields Conrail from successor liability arising from the acts or omissions of Erie Lackawanna and the other railroads which conveyed their rail properties to Conrail. *See Consolidated Rail Corp. v. United States*, 883 F. Supp. 1565, 1576-77 (S.C.R.R.R.A. 1995); *Penn Central Corp., supra*, 862 F. Supp. at 446.

-3-

12.    Conrail did not come into existence until April 1, 1976, when it was conveyed Erie Lackawanna's assets pursuant to the Rail Act.

13.    Defendant's have not submitted any evidence showing that the Decedent was exposed to asbestos during his Conrail employment.

14.    Pursuant to Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2), this Court has original and exclusive jurisdiction over actions involving the interpretation and implementation of conveyance orders entered by this Court and documents executed in accordance with those orders.

15.    Pursuant to Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this Court may stay or enjoin any action or proceeding in any State or Federal Court, other than the United States Supreme Court, if such action is contrary to the provisions of the Rail Act or any orders of this Court pursuant thereto.

16.    This Court has affirmed that it is the final arbiter of the correct interpretation of the Rail Act, the Final System Plan, and the orders and conveyance documents executed pursuant thereto. *See Consolidated Rail Corp., supra*, 883 F. Supp. 1565.

17.    To preserve its original and exclusive jurisdiction under the Rail Act, this Court has the power to stay FELA actions against Conrail which seek to impose successor liability on Conrail based upon alleged actions or omissions of Erie Lackawanna or other railroad companies that conveyed their rail assets to Conrail.

18.    Accordingly, the Pennsylvania Action directly contravenes the Rail Act, this Court's Conveyance Order and this Court's prior holdings.  Conrail cannot be held liable as a successor to Erie Lackawanna.

19.     There is a case of actual controversy between Conrail and Defendants that is within this Court's original and exclusive jurisdiction, and that controversy has ripened to the point at which an affirmative declaration from this Court is needed. This Court is authorized, pursuant to the Declaratory Judgment Act, to declare the rights and other legal relations of the parties. *See* 28 U.S.C. § 2201(a).

20.     Given that the Rail Act and NRSA provide for exclusive jurisdiction in this Court for claims seeking to assert successor liability against Conrail, the District Court of the United States District Court for the District of Columbia sitting as the Special Court is the only Court that can provide the declaratory relief Conrail seeks.

21.     Direct liability cannot be asserted against Conrail for actions of Erie Lackawanna.

22.     Pursuant to the Rail Act, the Final System Plan established by the USRA, and the order of this Court directing the conveyance of Erie Lackawanna's assets to Conrail effective April 1, 1976, Conrail may not be held liable as a successor in liability for the alleged acts or omissions of Erie Lackawanna.

23.     No evidence supports the assertion that Decedent was exposed to asbestos during employment with Conrail.

WHEREFORE, Conrail respectfully requests:

(a)     that this Court stay the Pennsylvania Action pending the resolution of this action;

(b)     that this Court enter a final order declaring that Conrail has no liability as a successor in liability of Erie Lackawanna or any Railroad Predecessor;

(c)     that this Court enjoin Defendants from seeking to hold Conrail liable for any acts or omissions of Erie Lackawanna;

(d)     that this Court grant Conrail such other relief as may be
appropriate under Count I.

Respectfully Submitted,

Of Counsel:

Laurence Z. Shiekman                    Charles Carpenter (D.C. Bar # 432004)
Ken Massey                              PEPPER HAMILTON LLP
T. Joel Zuercher                        600 Fourteenth Street, N.W., Suite 500
PEPPER HAMILTON LLP                     Washington, DC  20005-2004
3000 Two Logan Square                   Telephone: (202) 220-1200
Eighteenth and Arch Streets             Facsimile: (202) 220-1665
Philadelphia, PA  19103-2799            carpenterc@pepperlaw.com
Telephone: (215) 981-4000
Facsimile: (215) 981-4750               Attorney for Plaintiff,
                                        Consolidated Rail Corporation

July 27, 2007

# EXHIBIT A

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

By: Lee B. Balefsky, Esquire
I.D. #25321
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000
Fax: 215-735-0960
Attorney for Plaintiffs

A.S LAW DEPARTMENT
JUN 2 7 2005
NORFOLK

Received via UPS Express
to Roger A. Petersen

|  |  |
|---|---|
| GERARD H. RITTER AND ALICE K. RITTER, H/W<br>908 SOUTH WEBSTER AVENUE<br>SCRANTON, PA 18505<br>Plaintiffs<br><br>vs.<br><br>GARLOCK, INC., ET AL.<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>June 2005<br>TERM 2005<br>NO.<br>ASBESTOS CASE    060467<br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Asbestos

Litigation in Philadelphia County Court of Common Pleas, filed as of October Term 1986, No. 8610-

0001. Pursuant to an Order dated July 30, 1986, and signed by the Honorable Richard B. Klein, the

following Short Form Complaint is utilized in this asbestos action.

1.    This Complaint involves the claims of the following persons:

    a.    Plaintiff:  Gerard H. Ritter
        Date of Birth: 11/4/21
        Social Security: 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

    b.    Plaintiff-Wife:  Alice K. Ritter
        Date of Birth: 3/20/28
        Social Security: 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

2.    The Defendants are those companies listed in the caption.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

3.    Plaintiffs hereby incorporate by reference the following Counts from the Master Long

Form Complaint:  Counts I, II, III, IV, VIII and X.

4.    Plaintiff's asbestos employment history is as follows:

a.    3/41 to 8/42
12/45 to 1960
Delaware Lackawanna and Western Railroad
Scranton, PA
Apprentice machinist, journeyman, air brake inspector

b.    1960-1967
1971-1976
Erie Lackawanna Railroad
Jersey City, NJ
Scranton, PA
Hornell, NY
Air brake inspector

c.    Consolidated Rail Corporation
Scranton, PA
1976-1981
Air brake inspector

5.    Plaintiff was diagnosed on or about March 8, 2005, as having mesothelioma as a

result of his exposure to asbestos.

6.    Plaintiff smoked less than one pack of cigarettes per day from approximately 1942

to 1955.

7.    Plaintiff's wages during his last full year of employment were:

a. To be supplied.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

8.    Plaintiff's dependents are as follows:

a.  Alice K. Ritter - Wife

KLINE & SPECTER, P.C.

BY: _____
LEE B. BALEFSKY, ESQUIRE
Attorney for Plaintiffs

## VERIFICATION

We, GERARD H. RITTER and ALICE K. RITTER, being duly sworn according to law,

depose and state:

    1. We are the plaintiffs in this action;

    2. We verify that the statements made in the foregoing Complaint are true and

correct to the best of our knowledge, information and belief; and

    3. We understand that the statements made in said Complaint are subject to the

penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

 

GERARD H. RITTER

 

ALICE K. RITTER

DATED: 05-20-05

# EXHIBIT B

`ACHMENT O, SHEET :

M-000063

SPECIAL COURT REPORTER

SPECIAL COURT

REGIONAL RAIL REORGANIZATION ACT OF 1973

FILED

MAR 25 1976

JAMES F. DAVEY, Clerk

```
                                    )
        In the Matter of            )  Special Court
Regional Rail Reorganization Proceedings  )  Misc. No. 75-3(A)
                                    )
                                    )
```

ORDER OF CONVEYANCE TO TRUSTEES OF
RAILROADS IN REORGANIZATION IN THE REGION

Upon consideration that --

A.  On March 12, 1976, the United States Railway
Association ("Association"), pursuant to Section 209(c)
of the Regional Rail Reorganization Act of 1973, as
amended ("Rail Act"), certified to this Court which rail
properties of railroads in reorganization in the region
are to be transferred to Consolidated Rail Corporation
("Corporation") and which rail properties of such
railroads are to be conveyed to certain profitable
railroads as defined in the Rail Act ("Profitable
Railroads"), and advised this Court which rail properties
of such railroads are to be conveyed to States or
responsible persons in accordance with Section 206(d)(2)
of the Rail Act; and

Doc. No. 14

SPECIAL COURT REPORTER _____ - 2 - _____          M-000064

B.  on March 24, 1976, the Association filed with
this Court a document supplementing and perfecting its
March 12, 1976, certification of which rail properties
of railroads in reorganization in the region are to be
transferred to the Corporation and which rail properties
of such railroads are to be conveyed to Profitable
Railroads, States or responsible persons; and

C.  on March 22, 1976, the Corporation and the
Association, pursuant to Sections 303(a)(1) and 306(a),
respectively, of the Rail Act, deposited with this Court
all of the stock and other securities of the Corporation
and all of the Certificates of Value of the Association
designated in the Final System Plan that are to be
exchanged for the rail properties being transferred to
the Corporation; and

D.  on March 22, 1976, each Profitable Railroad,
State or responsible person, pursuant to Section
303(a)(2) of the Rail Act, deposited with this Court the
compensation designated in the Final System Plan to be
paid for the purchase of the rail properties being
conveyed to such Profitable Railroad, State or
responsible person; and

SPECIAL COURT REPORTER                    - 3 -

E.  the unusually large and complex conveyancing
that will occur pursuant to this Order can be expected
to result in a need for corrections, amendments or
supplements to the Conveyance Documents (as hereinafter
defined) and to this Order in order to carry out the
intent of the Final System Plan, such Conveyance
Documents and this Order:

NOW THEREFORE, pursuant to Section 303(b)(1) of
the Rail Act, it is hereby ordered:

Section 1.  Definitions

As used in this Order:

A.  "Certification" shall mean the Certification
(including all Appendices and documents submitted
therewith and made a part thereof) filed with this Court
by the Association on March 12, 1976; and on file in the
office of the Clerk of this Court at the United States
Courthouse in Washington, D.C.

B.  "Certification Supplement" shall mean the
Certification Supplement (including all Appendices and
documents submitted therewith and made a part thereof)
filed with this Court on March 24, 1976, and on file in

SPECIAL COURT REPORTER

M- 000065

the office of the Clerk of this Court at the United
States Courthouse in Washington, D.C.

C. "Conveyance Document Addendum" shall mean the
collection of documents denominated "Conveyance Document
Addendum," which was submitted to this Court by the
Association with and as a part of the Certification and
Certification Supplement and is on file in the office of
the Clerk of this Court at the United States Courthouse
in Washington, D.C.

D. "Conveyance Documents" shall mean the
documents listed in the Conveyance Document Schedules (as
hereinafter defined), except that the Conveyance
Documents shall not include any document or part thereof
filed with the Certification that has been superseded by
any such document filed with the Certification
Supplement. All maps referred to in the Conveyance
Documents are contained in the Map Addendum (as
hereinafter defined). All computer printouts of rolling
stock and equipment inventory referred to in the
Conveyance Documents are contained in the Rolling Stock
and Equipment Addendum (as hereinafter defined).

SPECIAL COURT REPORTER                                    M-000067

— 5 —

E.  "Conveyance Document Schedules"  shall mean
the Schedules contained in Appendices I-A, II-A and IV
of the Certification and Certification Supplement, which
Schedules identify the Conveyance Documents.

F.  "Final System Plan" shall mean the Plan
prepared by the Association which became effective on
November 9, 1975, pursuant to Section 208(a) of the Rail
Act (a certified copy of which was filed with this Court
as Appendix O-A to the Certification), together with the
Supplemental Report to the Plan dated September 18, 1975,
described in Section 208(d)(1) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-B to the Certification), the Official Errata
Supplement to the Plan dated December 1, 1975, described
in Section 208(d)(1) of the Rail Act (a certified copy
of which was filed with this Court as Appendix O-C to the
Certification), the Notice containing further
designations to the Plan, dated February 25, 1976,
described in Section 208(d)(3) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-D to the Certification), and the document
filed as Appendix O-E to the Certification, which
document contains the further designations of rail
properties described in Section 208(d)(2) of the Rail Act.

SPECIAL COURT REPORTER          - 6 -                    M-000068

G.  "Transferor" shall mean the person or persons identified as the Transferor, Grantor or Assignor in a Conveyance Document.

H.  "Transferee" shall mean the person or persons identified as the Transferee, Grantee or Assignee in a Conveyance Document.

I.  "Map Addendum" shall mean the collection of maps denominated "Map Addendum" which was submitted to this Court by the Association with and as a part of the Certification and Certification Supplement and is on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.  Copies of maps from the Map Addendum which are referred to in the Conveyance Documents relating to a particular Transferor are also on file with the United States District Court having jurisdiction over such Transferor.

J.  "Rolling Stock and Equipment Addendum" shall mean the collection of rolling stock and equipment inventory computer printouts denominated "Rolling Stock and Equipment Addendum" which was submitted on March 12, 1976, to this Court by the Association with and as a part of the Certification and is on file in the office of the

SPECIAL COURT REPORTER

Clerk of this Court at the United States Courthouse in
Washington, D.C.  Copies of computer printouts from the
Rolling Stock and Equipment Addendum which are referred
to in the Conveyance Documents relating to a particular
Transferor are also on file with the United States
District Court having jurisdiction over such Transferor.

K.  "Option" shall mean a Conveyance Document
which grants to the Transferee identified therein the
right to acquire designated rail properties from the
Transferor identified therein in accordance with the
terms and conditions set forth in such Document.  For
purposes of determining the period within which an Option
may be exercised, the effective date of this Order shall
be deemed to be 12:01 a.m. on April 1, 1976.

L.  "Acknowledgment of Receipt and Acceptance of
Conveyance Document(s)" shall mean the instruments,
copies of which are attached to this Order as Addenda I
and II, that are to be executed by the Transferees and
delivered to the appropriate Transferors in accordance
with the terms of this Order.

M.  "Conveyance Date" shall mean 12:01 a.m. on
April 1, 1976, except that, in the case of property
acquired pursuant to the exercise of an Option,

ATTACHMENT O, SHEET 9
A - 000070

SPECIAL COURT REPORTER _____ - 8 - _____

"Conveyance Date," for purposes of paragraphs A(1) and
A(2) of Section 4 of this Order, shall mean the date on
which such property is conveyed to the Transferee
pursuant to the exercise of such Option.

Section 2.  Execution and Delivery of Conveyance
            Documents

        The trustee or trustees of each Transferor
identified in each Conveyance Document shall execute
(and, where indicated, shall acknowledge) and on or
before the Conveyance Date shall deliver such Conveyance
Document to the Transferee identified therein -- such
delivery to be effective as of the Conveyance Date.  Any
such Conveyance Document (or any Conveyance Document
delivered pursuant to the exercise of an Option) may be
executed, acknowledged, and delivered on behalf of the
trustee or trustees by any person or persons who has or
have been authorized to perform such acts on behalf of
the trustee or trustees by the United States District
Court or other court having jurisdiction over the
Transferor identified in such Conveyance Document.
Execution, acknowledgment and delivery of any Conveyance
Document in which The Connecting Railway Company is
identified as Transferor shall be made by The Connecting
Railway Company as Debtor in possession of its properties

SPECIAL COURT REPORTER                     M-000071

("Connecting"). The execution and delivery of any
Conveyance Document by or on behalf of a trustee or
trustees or Connecting pursuant to this Order shall not
constitute a waiver of any right that such trustee or
trustees or Connecting may have to object to or
challenge, in whole or in part, the conveyance of the
property identified in such Conveyance Document or the
terms and conditions of any such conveyance or Conveyance
Document. The conveyance of all properties pursuant to
this Section shall be subject to all applicable terms and
conditions of the Conveyance Documents, the Rail Act and
this Order, and each Transferor and Transferee shall
faithfully and expeditiously comply with and fulfill all
such terms and conditions.

Section 3.  **Acknowledgment of Receipt and Acceptance**
**of Conveyance Document(s)**

Concurrently with delivery from a Transferor of
any Conveyance Document or Documents pursuant to this
Order, the Transferee shall execute and deliver to such
Transferor and forthwith file with the Clerk of this
Court an Acknowledgment of Receipt and Acceptance of
Conveyance Document(s) in the form attached hereto as
Addendum I; except that when a Conveyance Document is
delivered pursuant to the exercise of an Option, the

SPECIAL COURT REPORTER          - 10 -                    M-000072

Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) shall be in the form attached hereto as
Addendum II and shall specify the time at which such
Conveyance Documents were actually delivered.  In any
case in which a Transferee receives more than one
Conveyance Document from a particular Transferor, the
Transferee may deliver and file a single Acknowledgment
of Receipt and Acceptance of Conveyance Documents
referring to all of the Conveyance Documents received
from such Transferor.  The execution of any Conveyance
Document or the execution and delivery of any
Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) by any Transferee pursuant to this Order, or
the execution and delivery of any other document pursuant
to the terms of such Acknowledgment of Receipt and
Acceptance of Conveyance Document(s), shall not
constitute a waiver of any right that such Transferee may
have to object to or challenge, in whole or in part, the
obligations and conditions imposed on such Transferee by
the terms of any Conveyance Document or the terms and
conditions of the conveyance of the property identified
in such Conveyance Document.

SPECIAL COURT REPORTER

Section 4.  <u>Certain Terms and Conditions of Conveyance</u>

Each conveyance of property pursuant to this
Order shall, where applicable, be subject to the
following terms and conditions:

A.  <u>Allocation of Taxes, Assessments, Rents,
License Fees, User Fees and Other Charges</u>

(1)  <u>Allocation Over Time</u>.  As between the
Transferor and Transferee identified in any Conveyance
Document with respect to rail property conveyed to a
Transferee pursuant to this Order, the obligation, if
any, for payment of

(a)  any tax, assessment, license fee,
or other charge imposed by a
governmental authority on or with
respect to any such property or
any use thereof or thereon for any
period of time or term within
which the Conveyance Date falls,
or

(b)  any rent, license fee, user fee
or other charge imposed under or
by virtue of any lease, license,

M-000074

SPECIAL COURT REPORTER                      - 12 -

easement, encumbrance or other
agreement that continues to attach
to such property after the
Conveyance Date,

shall be adjusted on a _pro rata_ basis to the Date of
Conveyance so that

(i)   the Transferor is obligated for
any such payment as is
attributable to that portion of
such period or term preceding the
Conveyance Date, and

(ii)  the Transferee is obligated for
any such payment as is
attributable to the balance of
such period or term.

(2)   Allocation in the Case of Subdivided or
Aggregated Property.  In the case of any rail property
referred to in the preceding subdivision (1) that:

(a)   is part of a parcel of property
or an aggregation of property that
has been or is taxed, assessed or
otherwise charged as a unit for

ATTACHMENT D, SHEET 13

M-000075

SPECIAL COURT REPORTER                – 13 –

a period of time or term within
which the Conveyance Date falls,
or

(b)   is part of a parcel of property
or an aggregation of property that
is subject to one or more leases,
licenses, easements, encumbrances
or other agreements that continue
to attach to such parcel or
aggregation of property after the
Conveyance Date,

the obligation for payment of any tax, assessment, rent,
license fee, user fee or other charge that is or becomes
payable with respect to such parcel or aggregation of
property for that part of such period of time or term as
follows the Conveyance Date shall be allocated to such
Transferee in the proportion that the value of such
property conveyed to such Transferee bears to the total
value of such parcel or aggregation of property, determined
as of the Conveyance Date; provided that, if any such
tax, assessment, rent, license fee, user fee or other
charge is attributable to the parts constituting such
parcel or aggregation of property on a basis other than the

M-000076

SPECIAL COURT REPORTER
- 14 -

relative values of such parts, such allocation shall be
made on such other basis.  If the parties are unable to
agree on the basis or method for allocating any such tax,
assessment, rent, license fee, user fee or other charge,
either or both of such parties may apply to this Court
for an order determining the basis or method to be used
for such allocation.

    **B.  Pre-Recording Protection of Transferors
and Transferees**

    In the case of real property conveyed, or
reserved and excepted from conveyance, in any Conveyance
Document, on and after the Conveyance Date and until such
Conveyance Document shall have been filed for record with
respect to such property in each local jurisdiction in
which such property is situated, no Transferor or
Transferee identified in such Conveyance Document shall
transfer or convey such property, in whole or in part,
or create any lien or encumbrance on or with respect to
such property, unless the instrument effecting such
transfer or conveyance or creating such lien or
encumbrance provides that such property is subject to any
easement, encumbrance, right or benefit that may have
been created or recognized in or by such Conveyance
Document.

ATTACHMENT D, SHEET 15

M-000077

SPECIAL COURT REPORTER                          - 15 -

C.  <u>Resignations of Representatives of the Trustees</u>

On and after Conveyance Date, the trustee or
trustees of each Transferor and Connecting shall, upon
the request of a Transferee, use his, their or its best
efforts to cause any person who is serving at the request
of such Transferor as a director or officer of another
corporation, partnership, joint venture, or other
enterprise, the stock ownership or other corporate
interest in which is conveyed from such Transferor to
such Transferee pursuant to this Order, to resign from,
or otherwise act in accordance with the lawful directions
of the Transferee with respect to, such person's position
as such director or officer; <u>provided</u>, <u>however</u>, that
nothing herein shall be deemed a restraint upon the
ability of any such person otherwise to resign from such
position as director or officer.

M-000078

SPECIAL COURT REPORTER          - 16 -

Section 5.  Correction of Errors

    A.  Correction of Errors by or on Application
        of Transferors and Transferees

    To the extent necessary to

           (a)  carry out the intent of a
               Conveyance Document or to perfect
               a designation contained in the
               Final System Plan, or

           (b)  record or otherwise perfect any
               Conveyance Document delivered
               pursuant to this Order under any
               applicable statute, ordinance,
               rule or regulation,

each Transferor or Transferee shall perform, execute,
acknowledge, endorse and deliver any and all such further
acts, deeds, transfers, assignments, certificates and
other instruments as may be reasonably requested by any
Transferor or Transferee in order to convey, reconvey,
confirm, clarify, identify or more precisely describe the
properties designated to be conveyed in the Final System
Plan or the properties conveyed or reserved and excepted
from conveyance in any Conveyance Document (or intended

SPECIAL COURT REPORTER                    - 17 -

so to be).  If such parties are unable to agree upon or
effectuate such action as should be taken pursuant to
this paragraph or the division of costs incident to such
action, such party or parties may apply to this Court for
such relief as may be appropriate; provided that no
person shall apply to this Court for an order or other
action under this paragraph A without concurrently
serving the Association with notice of such application.

### B.  Retention of Jurisdiction

This Court retains jurisdiction under Section
209(e) of the Rail Act.

### Section 6.  Certification of Documents to Transferors and Transferees

Promptly after the entry of this Order, the
Association shall deliver to each Transferor and
Transferee a copy of the Conveyance Documents to which
such Transferor or Transferee is a party together with
each map and rolling stock and equipment inventory
computer printout referred to in such Conveyance
Documents and shall certify that such Conveyance
Documents, maps, and printouts are true copies of the
Conveyance Documents, maps, and printouts certified by

M~00008

SPECIAL COURT REPORTER

the Association to this Court and filed in the office of
the Clerk of this Court.

Section 7. Issuance of Certified Copies

Upon request of any Transferor or Transferee or
any interested person and upon payment of such reasonable
fee as may from time to time be established by the rules
of this Court, the Clerk of this Court shall issue a
certified copy of this Order together with a certified
copy of any Conveyance Document requested by such person
and shall certify that such Conveyance Document was
certified to this Court by the Association and is
identified in the files of this Court by the Document
Number appearing on such certified copy of such
Conveyance Document.

Section 8. Compilation and Deposit of Sets of Conveyance
Documents

The Association shall cause to be compiled
complete sets of the Conveyance Documents (and the maps
referred to in such Conveyance Documents) in the sequence
listed in the Conveyance Document Schedules and in the
form prepared for execution and delivery of such
Conveyance Documents, and shall deposit two complete sets
thereof with the Clerk of this Court on or before 12:00

ATTACHMENT U, SHEET 19

M - 008081

SPECIAL COURT REPORTER              - 19 -

noon on March 29, 1976, and shall attest that each such
set contains true copies of all such Conveyance Documents
certified to this Court by the Association.

Henry J. Friendly
Presiding Judge

John Minor Wisdom
Judge.

Roszel C. Thomsen
Judge

Date:  March 15, 1976

# EXHIBIT C

03/24/97  MON 16:47 FAX 202 273 0479        ADMIN/SERVICE                    ☒002
MAR-24-1997  11:56        JUDGE WEINER                                P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CONSOLIDATED RAIL CORPORATION            :
                                         :
                                         :
                                         :
                                         :        Special Court
            v.                           :        Regional Rail Act
                                         :        C.A. NO. 97-RR-01[1]
                                         :
                                         :
COMMONWEALTH OF PENNSYLVANIA             :
DEPARTMENT OF GENERAL SERVICES           :
and THE FRANK BRISCOE CO., INC.          :

                                                    **FILED**

WEINER, J.[2]                            March 24, 1997 MAR 24 1997

                                                    NANCY MAYER-WHITTINGTON, CLERK
                                                       U.S. DISTRICT COURT
            MEMORANDUM OPINION AND ORDER


        Consolidated Rail Corporation (Conrail) brought this
action for declaratory relief against the Commonwealth of Pennsyl-
vania Department of General Services (DGS) and The Frank Briscoe
Company, Inc. (Briscoe), seeking a partial stay of proceedings in
the Court of Common Pleas of Dauphin County.  Conrail seeks a
declaration that the subject matter of the underlying suit is
partly within the exclusive jurisdiction of this court[3], and that

---

[1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

[2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

[3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

it has no liability as a successor or assignee of the Penn Central Corporation. Also before the court is a motion by the defendants to dismiss. This matter was heard on an expedited basis since the Dauphin County action is scheduled for imminent trial.[4] For the reasons which follow, Conrail's motion for a partial stay of the Dauphin County action is granted, the defendants' motion to dismiss is denied and final declaratory judgment is entered in favor of Conrail and against the defendants.

Our jurisdiction is asserted under Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2). This action arises out of the construction of the Pittsburgh Exposition and Convention Center. On July 1, 1975, the trustees of the Penn Central Corporation transferred title to the land underlying the site of the Convention Center to DGS by a deed. At the time of the conveyance, Conrail was not yet in existence and hence had no interest in the property. By Conveyance Order issued by this court on March 25, 1976, we directed Penn Central to execute a deed effective April 1, 1976, conveying certain of Penn Central's rail properties to Conrail. Under Section 303(b)(2) of the Rail Act, such conveyance was to be made "free and clear of any liens or encumbrances" consistent with the Final System Plan proposed by the United States Rail Association. The conveyance included all of Penn Central's remaining interests in the land underlying the Convention Center. Since Penn Central had already conveyed the land to DGS, the April 1, 1976

_____

[4]The parties have now also agreed to have the court enter a final decision on the merits, as well as the motion for partial stay.

2

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
> . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.

Schedule E to the Bill of Sale provided:
> Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

Loftus Division of Eichleay Engineering (Loftus).  DGS filed a
second action in 1989 in which it named eight defendants; again
Conrail was not one of them.  It was again joined by Loftus.  In
1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed
presence of an underground electrical ductbank, which was struck by
construction workers driving piles for the new Convention Center.
The ductbank was struck after Penn Central had conveyed the land to
DGS, and after its remaining interests were conveyed to Conrail.
The claims against Conrail seek to hold it liable both as a
successor to Penn Central, as well as for independent, post-
conveyance acts of its agents who were on site during the construc-
tion.  Successor liability is premised upon Penn Central's pre-
conveyance statements to DGS that all utilities had been abandoned,
Penn Central's failure to de-energize and relocate the power line,
and its failure to include the power line on construction drawings.
Direct liability is premised upon Conrail's unreasonable delay in
moving the power line after its accidental discovery, as well as
the fact that its on site agent failed to warn of the existence of
the power line.

Reduced to its essence, Conrail argues that since the
successor liability issues presented in the Dauphin County action
are within the exclusive jurisdiction of this court, the Dauphin
County action must be stayed.  Pursuant to Section 209(g) of the
Rail Act, this court may stay or enjoin any action or proceeding in
any state or federal court, other than the United States Supreme

4

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.    45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).    Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.    See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

5

03/24/97  MON 16:48 FAX 202 273 0479       ADMIN/SERVICE                    @007
        MAR-24-1997  13:35         JUDGE WEINER                           P.02/03

court's conveyance order, or the conveyance documents; and is within our jurisdiction. While both sides point to our decisions in Penn Central v. United States, supra and Consolidated Rail Corp. v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as support for their jurisdictional arguments, we find this action is far more simple than the situations presented there. In both Penn Central and Consolidated Rail, we were faced with the interplay of the Rail Act and a second statutory scheme, the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. §9601, et seq. Finding that, in enacting CERCLA, Congress intended its liability provisions to apply notwithstanding any other provision of law, we concluded that CERCLA was an exception to the fresh start policy embodied in the Rail Act. While we refused to completely exonerate Conrail from post-conveyance CERCLA liability, we reconciled the two statutory schemes by making clear that pursuant to the Rail Act, liability for pre-conveyance environmental contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme at issue. As we read the underlying pleadings, liability is premised upon common law contract and tort theories, seeking, inter alia, to hold Conrail responsible as corporate successor for Penn Central's acts and omissions. The fresh start policy embodied in the Rail Act, and incorporated into the conveyancing documents, creates a bright line date upon which the liability of Penn Central ended and the liability of Conrail began. Congress mandated that

6

there be no successor liability hindering the future financial well being of the newly created Conrail.  Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished.  However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it.  As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION         :
                                      :
                                      :
                                      :
          v.                          :        Special Court
                                      :        Regional Rail Act
                                      :        C.A. NO. 97-RR-01
                                      :
COMMONWEALTH OF PENNSYLVANIA          :
DEPARTMENT OF GENERAL SERVICES        :        FILED
and THE FRANK BRISCOE CO., INC.       :
                                               MAR 24 1997

JUDGMENT ORDER                                 NANCY MAYER-WHITTINGTON, CLERK
                                               U.S. DISTRICT COURT

     The  motion  to  dismiss  defendants  Commonwealth  of
Pennsylvania Department of General Services and The Frank Briscoe
Co., Inc. is DENIED.

     The motion of plaintiff Consolidated Rail Corporation to
stay is GRANTED.

     Judgment on the merits is ENTERED in favor of plaintiff
Consolidated Rail Corporation and against defendants Commonwealth
of Pennsylvania Department of General Services and The Frank
Briscoe Co., Inc.

     The court DECLARES that pursuant to the conveyance orders
issued by this court and the conveyance documents executed
thereunder, there is no successor liability of Consolidated Rail
Corporation for the acts and omissions of the Penn Central
Transportation Company for the period prior to April 1, 1976 as
asserted in the pleadings filed in the consolidated actions

8

captioned <u>Commonwealth of Pennsylvania, Department of General</u> <u>Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associ-</u> <u>ates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

_____
CHARLES R. WEINER

9

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Consolidated Rail Corporation | Gerard A. Ritter and Susan R. Norek, Executors for the Estate of Gerard H. Ritter, deceased |

| | |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)    88888<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br><br>Charles Carpenter<br>Pepper Hamilton LLP<br>600 14th Street, N.W., Suite 500<br>Washington, D.C. 20005-2004<br>(202) 220-1200 | ATTORNEYS (IF KNOWN)<br><br>Lee B. Balefsky<br>Kline & Spector<br>1525 Locust Street, 19th Floor<br>Philadelphia, PA 19102<br>(215) 772-1000 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. *Antitrust*

☐ 410 Antitrust

○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
45 USC § 1701 et seq.; invoking special court jurisdiction under Reg. Rail Reorg. Act of 1973

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  JURY DEMAND:  Check YES only if demanded in complaint  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE 7/27/07    SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may only select one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.