**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————————————————————

CONSOLIDATED RAIL CORPORATION    :
                                     :
           Plaintiff,                :      Case 1:07-cv-01370 - RMU
                                       :
      v.                            :
                                       :
GERARD A. RITTER AND SUSAN R. NOREK,: 
**Executors for the Estate of GERARD H.**   :
**RITTER, decease**                      :
                                       :
          Defendants             :

———————————————————————————————————————

## <u>MOTION TO DISMISS</u>

1.  This action originates in the Philadelphia Court of Common Pleas, where the Defendants, as Executors of the Estate of Gerard H. Ritter, instituted an action against various entities that negligently caused Mr. Ritter to be exposed to asbestos.  Such exposure resulted in Mr. Ritter being diagnosed with mesothelioma on March 8, 2005 and dying from that illness on July 20, 2006.  (*See* Plaintiffs' Short Form Complaint, attached hereto as Exhibit A.)

2.  One of the defendants named in said Complaint is Plaintiff here, Consolidated Rail Corporation (hereinafter "Conrail").  During his lifetime, the Decedent, Mr. Ritter, was employed by the Delaware Lackawanna and Western Railroad and the Erie Lackawanna Railroad Company (hereinafter "Erie Lackawanna").   The executors of Mr. Ritter's estate allege that Conrail is liable pursuant to The Federal Employers' Liability Act ("FELA"),  45 U.S.C. §51, *et seq*., for negligently exposing Mr. Ritter to asbestos during his employment.  It is alleged that Conrail is liable as a successor to Erie Lackawanna and that Conrail is also directly liable for Mr. Ritter's death, as Mr. Ritter was also employed by Conrail as an air brake inspector from

- 1 -

1976 - 1981. As set forth in Conrail's Complaint for Declaratory Relief, certain rail properties of Erie Lackawanna were conveyed to Conrail, effective April 1, 1976.

3. The Philadelphia Court of Common Pleas lawsuit has been pending since June, 2005. Trial is currently scheduled to commence on October 1, 2007. Conrail has not challenged the adequacy of the state court action to determine the successor liability issue, as no challenge could credibly be asserted.

4. On July 27, 2007, Plaintiff Conrail filed this Complaint for Declaratory Relief, seeking, *inter alia*,

    (a)    that this Court stay the Pennsylvania Action pending the resolution of this action;

    (b)    that this Court enter a final order declaring that Conrail has no liability as a successor in liability of Eric Lackawanna or any Railroad Predecessor;

    (c)    that this Court enjoin Defendants from seeking to hold Conrail liable for any acts or omissions of Erie Lackawanna;

    (d)    that this Court grant Conrail such other relief as may be appropriate under Count I.

5. For the reasons set forth herein and in the attached Memorandum of Law -- notably that this Court lacks jurisdiction over the case -- Defendants respectfully request that this Court dismiss Conrail's Complaint for Declaratory Relief and that this matter be permitted to proceed to trial as scheduled in Philadelphia County.

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss Consolidated Rail Corporation's Complaint for Declaratory Relief.

Respectfully submitted,

Dated: August 20, 2007

/s/ Denis C. Mitchell
Denis C. Mitchell, Bar No. MD26510
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
202-737-7777
dmitchell@steinmitchell.com

Attorneys for Defendants Gerard A. Ritter
And Susan R. Norek, Executors for the Estate of
Gerard H. Ritter, deceased

Of Counsel:
KLINE & SPECTER, P.C.
Lee B. Balefsky, Esquire
Michelle L. Tiger, Esquire
Cheryl P. Jacobs, Esquire
1525 Locust Street. 19th Floor
Philadelphia, PA 19102

Attorneys for Defendants Gerard A. Ritter
And Susan R. Norek, Executors for the
Estate of Gerard H. Ritter, deceased

- 3 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : | |
| | : | |
| Plaintiff, | : | Case 1:07-cv-01370 - RMU |
| | : | |
| vi. | : | |
| | : | |
| **GERARD A. RITTER AND SUSAN R. NOREK,** | : | |
| **Executors for the Estate of GERARD H.** | : | |
| **RITTER, decease** | : | |
| | : | |
| Defendants | : | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

IV.    INTRODUCTION

Conrail has filed this Declaratory Judgment Action to determine the issue of successor

liability in an underlying lawsuit which has been pending since 2005 in the Philadelphia County

Court of Common Pleas.  Trial in that matter is scheduled to commence on October 1, 2007.  For

the reasons set forth below, Defendants respectfully request that this Declaratory Judgment

Action be dismissed.

II.    THIS COURT LACKS JURISDICTION TO DETERMINE ISSUES FRAMED BY
       PLAINTIFF

   A.    **THIS COURT LACKS ORIGINAL AND EXCLUSIVE JURISDICTION
          UNDER THE RAIL ACT**

Conrail claims that this Court has original and exclusive jurisdiction over the underlying

action pursuant to §§ 209(e) and (g) of the Rail Act, 45 U.S.C. § 719(e), (g).  Conrail is wrong.

- 4 -

This Court has specifically held that the Rail Act does not grant this Court with jurisdiction to determine successor liability in a FELA case involving asbestos.  See *Consolidated Rail Corporation, et al., v. Reading Company, et al.*, 654 F. Supp. 1318, 1324-1325 (D.D.C. 1987) (Sp.Ct.R.R.R.A., 1987).  There, this Court considered and rejected Conrail's argument that the federal rail legislation barred recovery by railroad employees or their representatives for injuries and/or death sustained as a result of asbestos exposure.  This Court denied that the legislation barred recovery and declined to exercise jurisdiction.  In the opinion, dated January 27, 1987, this Court explained,

> § 209(e)(1) does not confer jurisdiction over every suit requiring an interpretation of the Rail Act.  There must be a challenge to an action or inaction of the USRA or to a provision of the Rail Act itself.  *Prairie Central Ry. v. Illinois Central Gulf RR.*, 564 F.Supp 385 (Sp.Ct.R.R.R.A. 1983).  The other provisions of § 209(e) are inapplicable to these cases.  Conrail and Amtrak are not challenging the Rail Act but seeking a declaration that the overall purpose of the Act, to establish an economically viable freight railroad in the region, is jeopardized by the possibility of imposing common law successor liability on Conrail.  This may be so, but it is not within our exclusive jurisdiction to determine.

*Reading Company,* 654 F. Supp. at 1324-1325 [footnote omitted].

## B.  THIS COURT HAS PREVIOUSLY DECIDED THAT IT WILL NOT DETERMINE CONRAIL'S SUCCESSOR LIABILITY IN ASBESTOS CASES AND SUCH CLAIMS ARE NOT PREEMPTED, NOR PRECLUDED, BY THE RAIL ACT

Interestingly, Conrail did not cite the published opinion where this Court held that it lacked jurisdiction to determine the issue of Conrail's successor liability in an asbestos case.  That case,  *Consolidated Rail Corporation, et al., v. Reading Company, et al.*, *supra.*,  involved an identical set of issues as those presented in this underlying case.  Specifically, railroad employees, or their representatives, had brought actions for damages for injuries and death

sustained as a result of asbestos exposure.  Conrail filed an action with this Court, seeking

declaration that the federal rail legislation barred recovery.  This Court held that its jurisdiction

was limited by § 209 and  federal rail legislation did not expressly or impliedly preempt state

common-law successor liability:

> In the final analysis we are bound by Congress' intent.  Although the legislative history of § 709(b) [1] makes clear that the liability for "[a]ll cases or claims . . . for personal injury . . . against a railroad in reorganization . . ." was ultimately to be borne by the railroads in reorganization, both NRSA and its legislative history are completely silent with respect to who should assume liability for claims for occupational injuries which did not manifest themselves until after the bankrupt railroads had been reorganized and were no longer "railroads in reorganization . . . .
>
> We must assume that Congress knew that railroad workers were susceptible to latent occupational diseases which might not manifest themselves until after the bankrupt railroads had been reorganized and discharged in bankruptcy; and that it also knew that such workers would not be able to avail themselves of the unique opportunities provided by § 709(b).  However, Congress' failure to make specific provisions for these employees in the Rail Act can hardly be interpreted as a determination that they be bereft of any otherwise available remedy.  There is no discernible reason to suppose that the same Congress which expressly provided that workers who had the opportunity to bring FELA claims for preconveyance injuries prior to the consummation of bankruptcy proceedings would be entitled to full and expedited relief intended, *sub silentio*, to foreclose any available remedy from those workers who did not (and through no fault of their own could not) file identical claims until after their former employers had been discharged in bankruptcy.  At any rate we find no basis for inferring such congressional intent.

---

[1] § 709 (b)   states:

"ASSUMPTION OF PERSONAL INJURY CLAIMS. - All cases or claims by employees or their personal representatives for personal injuries or death against a railroad in reorganization in the Region arising prior to the date of conveyance of rail properties, pursuant to section 303 of this Act, [45 U.S.C. § 743] shall be assumed by the Corporation or an acquiring railroad, as the case may be."  *Consolidated Rail Corporation*, 654 F. Supp. at 1322.

*Consolidated Rail Corporation*, 654 F. Supp. at 1333.  This case remains controlling law and, in fact, was cited with approval by a subsequent case, *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 710 F. Supp. 152, 155 (E.D.Pa.  1989).  It is odd that Conrail failed to mention the case in their Complaint for Declaratory Relief, not only for its obvious applicability, but also because of one of Conrail's counsel herein (Laurence Z. Shiekman) represented Conrail in the *Lower Lake Erie* case[2].  In *Lower Lake Erie*, Chief Judge Fullam noted the Special Court's lack of jurisdiction to consider successor liability issues:

> The Rail Act does reflect a congressional intent to enable Conrail to start out, as of April 1, 1976, with a clean slate.  But there is plainly no basis for suggesting that Congress wished to enable Conrail to engage in an antitrust conspiracy thereafter without incurring the same penalties as other antitrust violators.
>  . . .
>
> Rejection of Conrail's argument is consistent with, indeed virtually compelled by, the decision of the Special Court on the analogous issue of successorship liability under state law, *Consolidated Rail Corp. v. Reading Co., et al.*, 654 F. Supp. 1318 (Sp.Ct. RRRA, 1987).

*In re Lower Lake Erie Iron Ore Antitrust Litigation*, at 155.

Conrail did provide the Court with a copy of an unpublished Memorandum Opinion and Order of this Special Court dated March 24, 1997, which held that Conrail would not be held liable for a preconveyance incident where an undisclosed underground electrical ductbank was struck by construction workers.   The accident occurred after Penn Central had conveyed the land to the Commonwealth of Pennsylvania Department of General Services (DGS) and after its remaining interests were conveyed to Conrail.  The claims against Conrail were both in successor liability and direct liability.  Conrail asked this Court to stay the state court action and

---

[2] Again, Conrail sought relief from the trial court and not this Special Court, to determine liability for pre-conveyance acts.

to adjudicate successor liability.  This Court found that liability was premised upon common law contract and tort theories, and that there was no successor liability.  "Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad." *Consolidated Rail Corporation v. Commonwealth of Pennsylvania Department of General Services, et al.*, Sp.Ct. RRRA, C.A. No. 970RR-01, p.7.  (Opinion attached here as Exhibit B.)

This unpublished Memorandum Opinion, which appears never to have been cited in a published decision or otherwise relied upon by another court, is inapposite in view of this Court's decision in *Reading Company*, where this Court addressed issues virtually identical to those presented here, where it conducted a careful analysis of asbestos litigation and the problem of latent claims (which cannot be determined until many years after the conveyance of assets and properties to Conrail and long after the bankruptcies of the prior railroads were extinguished), and where it held that FELA claims involving successor liability are not barred by the Rail Act.

III.    THE DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-2202 DOES NOT
          PROVIDE A BASIS FOR JURISDICTION

Conrail asserts that a declaratory judgment is appropriate under the circumstances alleged in the Complaint.  Once again, Conrail is wrong.  Fed. R. of Civ. P.  57 governs procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201.   The Advisory Committee Note to Rule 57 indicates that Declaratory Judgments are proper to declare the existence or non-existence of any right, duty . . . or immunity.  *United States v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 923 F. 2d 1071, 1074-1075 (3rd Cir., 1991).   Guidance

regarding the exercise of the discretion which exists in the exercise of such jurisdiction was

provided in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620 (1942).

(*Id*., at 1075)

> [T]he district court had granted a motion to dismiss for the reason that a related case was currently pending in a state court without inquiry into the adequacy of the state forum to decide the respondent's claims.  On review, the Supreme Court determined that an evaluation of the adequacy and reach of the state court proceeding was critical, suggesting 'inquiry into the scope of the pending state court proceeding and the nature of defenses open there.'  *Id*., at 495, 62 S.Ct. at 1175.
> The central question is whether the controversy may 'better be settled' in the state court and this may entail consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding.  *Id*.
>
> . . .
>
> In addition to Brillhart's guidance, we have, through our opinions, enumerated several factors for consideration:
> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation; and
> (4) the availability and relative convenience of other remedies.

*United States v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 923

F.2d, at 1075.

     In view of these standards, it is clear that a declaration would not be proper here.

First, the issue of Conrail's successor liability is undoubtedly better settled in Pennsylvania state

court, under Pennsylvania law.  Conrail is a Pennsylvania Corporation.  Mr. Ritter lived in

Pennsylvania until the time of his death.   Pennsylvania Courts have well-developed case law on successor liability and are obviously well-equipped to apply that law.[3]

Second, a decision by this Special Court as to the successor liability of Conrail will not resolve this uncertainty, as this issue is sure to arise in numerous other asbestos lawsuits where Conrail is named as a defendant.  Apart from the fact that this Court lacks jurisdiction to resolve this issue, Defendants submit that such a decision will merely open the floodgates of similar Motions for Declaratory Judgment filed by Conrail in other cases.  The Rail Act cannot be read to implicate this Court in the determination of successor liability in the numerous asbestos cases involving that issue.

Third, it would be far more convenient for the parties to resolve this issue in the Pennsylvania courts and decidedly inconvenient were it to be decided in the District of Columbia.   The parties all reside in Pennsylvania.  Mr. Ritter's representatives are prepared and eager to commence trial on October 1, 2007.  This action merely distracts the parties from preparing for trial and, if Conrail's motion for stay is granted, postpones said trial indefinitely to the detriment of the parties and the Pennsylvania courts.

Fourth, if the issue of successor liability is of public interest, it would be Pennsylvania who would have that interest since Conrail is a Pennsylvania Corporation, employing

---

[3]  It should be noted that under Pennsylvania law, Conrail would be considered a mere continuation of Erie Lackawanna and subject to successor liability.   While Pennsylvania's general rule is that a successor company does not acquire the liabilities of the transferring corporation merely because of a transfer of assets, "the general rule does not apply and liability attaches to the successor when . . . [t]he purchasing corporation is merely a continuation of the selling corporation." *See Childers v. Power Line Equipment Rentals, Inc.*, 681 A. 2d 106, 107 (Pa. Super. 1981).

Pennsylvania residents.  As stated above, the Pennsylvania courts are well-equipped to determine this issue.

Finally, there is already an action pending in Philadelphia County.  Fact discovery has been completed and the issue of Conrail's successor liability can easily and conveniently (to all parties) be decided there.  In fact, Conrail has filed a "Protective Motion for Summary Judgment" raising these same issues of successor liability in the underlying action in Philadelphia County.  (A true and correct copy of Conrail's Protective Motion for Summary Judgment is attached hereto as Exhibit C.) This certainly implies that Conrail does not truly believe that this Special Court has original and exclusive jurisdiction over this issue and that Conrail has proceeded in this fashion to multiply proceedings and cause delay.

## IV.    A STAY OF THE UNDERLYING ACTION IN PHILADELPHIA WOULD BE IMPROPER

As discussed above, Defendants (Representatives of the Decedent's Estate in the underlying action) would be extremely prejudiced by a stay of the proceedings now nearing trial in Philadelphia.  Apart from the expense and burden of defending another action in another State, the delay and emotional burden of such a delay is incalculable to the family.  They suffered a death of their loved one and are two months from trial.  They wish to proceed and have this matter determined.  Conrail has taken inconsistent positions regarding successor liability.  At times, Conrail has alleged that this Special Court has exclusive jurisdiction over the issue of successor liability.  At other times, it has filed identical motions in the trial court where the underlying action is pending.  Here, Conrail has filed motions on the successor liability issue in multiple venues, but has never alleged that Philadelphia County is not an adequate forum to determine these issues.   In the end, the Pennsylvania courts are the best positioned to determine

- 11 -

this issue.    Accordingly, Defendants herein respectfully request that Conrail's Complaint for Declaratory Relief be dismissed.

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss Consolidated Rail Corporation's Complaint for Declaratory Relief.


Respectfully submitted,


Dated: August 20, 2007                    /s/ Denis C. Mitchell
                                          Denis C. Mitchell, Bar No. MD26510
                                          STEIN MITCHELL & MEZINES
                                          1100 Connecticut Avenue NW
                                          Suite 1100
                                          Washington, DC 20036
                                          202-737-7777
                                          dmitchell@steinmitchell.com

                                          Attorneys for Defendants Gerard A. Ritter
                                          And Susan R. Norek, Executors for the Estate of
                                          Gerard H. Ritter, deceased


Of Counsel:
KLINE & SPECTER, P.C.
Lee B. Balefsky, Esquire
Michelle L. Tiger, Esquire
Cheryl P. Jacobs, Esquire
1525 Locust Street. 19th Floor
Philadelphia, PA 19102


Attorneys for Defendants Gerard A. Ritter
And Susan R. Norek, Executors for the
Estate of Gerard H. Ritter, deceased

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2007 the foregoing motion and supporting memorandum was served electronically and by First Class mail on counsel for the plaintiff:

Laurence Z. Shiekman, Esquire
Ken Massey, Esquire
T. Joel Zuercher, Esquire
PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Charles Carpenter, Esquire
PEPPER HAMILTON, LLP
600 Fourteenth Street NW, St. 500
Washington, DC 20005-2004

/s/ Denis C. Mitchell_____
Denis C. Mitchell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : | |
| | : | |
| Plaintiff, | : | Case 1:07-cv-01370 - RMU |
| | : | |
| v. | : | |
| | : | |
| **GERARD A. RITTER AND SUSAN R. NOREK,** | : | |
| **Executors for the Estate of GERARD H.** | : | |
| **RITTER, deceased** | : | |
| | : | |
| Defendants | : | |

---

## <u>ORDER</u>

Upon consideration of defendant's motion to dismiss the complaint, any opposition

thereto, and the entire record in this matter, it is hereby

ORDERED that the motion is GRANTED; it is further

ORDERED that the plaintiff's complaint is dismissed with prejudice.

Dated: _____

_____
The Honorable Ricardo M. Urbina
United States District Court
 for the District of Columbia

<u>Copies to</u>:

Denis C. Mitchell
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
<u>dmitchell@steinmitchell.com</u>

Lee B. Balefsky, Esquire
Cheryl P. Jacobs, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street. 19th Floor
Philadelphia, PA 19102

Laurence Z. Shiekman, Esquire
Ken Massey, Esquire
T. Joel Zuercher, Esquire
PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Charles Carpenter, Esquire
PEPPER HAMILTON, LLP
600 Fourteenth Street NW, St. 500
Washington, DC 20005-2004

# EXHIBIT

# A

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

By: Lee B. Balefsky, Esquire
I.D. #25321
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000
Fax: 215-735-0960
Attorney for Plaintiffs

LAW DEPARTMENT
JUN 27 2005
NORFOLK

Received via UPS Express
to Roger A. Petersen

GERARD H. RITTER AND ALICE K.
RITTER, H/W
908 SOUTH WEBSTER AVENUE
SCRANTON, PA 18505
    Plaintiffs

  vs.

GARLOCK, INC., ET AL.
    Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

June 2005
TERM 2005

NO.
ASBESTOS CASE 060467
JURY TRIAL DEMANDED

### CIVIL ACTION COMPLAINT

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Asbestos

Litigation in Philadelphia County Court of Common Pleas, filed as of October Term 1986, No. 8610-

0001. Pursuant to an Order dated July 30, 1986, and signed by the Honorable Richard B. Klein, the

following Short Form Complaint is utilized in this asbestos action.

1. This Complaint involves the claims of the following persons:

  a. Plaintiff: Gerard H. Ritter
    Date of Birth: 11/4/21
    Social Security: 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

  b. Plaintiff-Wife: Alice K. Ritter
    Date of Birth: 3/20/28
    Social Security: 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

2. The Defendants are those companies listed in the caption.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

3.    Plaintiffs hereby incorporate by reference the following Counts from the Master Long

Form Complaint:  Counts I, II, III, IV, VIII and X.

4.    Plaintiff's asbestos employment history is as follows:

a.    3/41 to 8/42
12/45 to 1960
Delaware Lackawanna and Western Railroad
Scranton, PA
Apprentice machinist, journeyman, air brake inspector

b.    1960-1967
1971-1976
Erie Lackawanna Railroad
Jersey City, NJ
Scranton, PA
Hornell, NY
Air brake inspector

c.    Consolidated Rail Corporation
Scranton, PA
1976-1981
Air brake inspector

5.    Plaintiff was diagnosed on or about March 8, 2005, as having mesothelioma as a

result of his exposure to asbestos.

6.    Plaintiff smoked less than one pack of cigarettes per day from approximately 1942

to 1955.

7.    Plaintiff's wages during his last full year of employment were:

a. To be supplied.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

8.    Plaintiff's dependents are as follows:

a.  Alice K. Ritter - Wife

KLINE & SPECTER, P.C.

BY: _____
LEE B. BALEFSKY, ESQUIRE
Attorney for Plaintiffs

## VERIFICATION

We, GERARD H. RITTER and ALICE K. RITTER, being duly sworn according to law, depose and state:

      1. We are the plaintiffs in this action;

      2. We verify that the statements made in the foregoing Complaint are true and correct to the best of our knowledge, information and belief; and

      3. We understand that the statements made in said Complaint are subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.


                                                      _____
                                                      GERARD H. RITTER

                                                      _____
                                                      ALICE K. RITTER

DATED: _05 - 20 - 05_

# EXHIBIT

# B

03/24/97  MON 16:47 FAX 202 273 0479     ADMIN/SERVICE                                    @002
MAR-24-1997  11:56          JUDGE WEINER                                        P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION     :
                                  :
                                  :
                                  :
             v.                   :          Special Court
                                  :          Regional Rail Act
                                  :          C.A. NO. 97-RR-01[1]
                                  :
                                  :
COMMONWEALTH OF PENNSYLVANIA      :
DEPARTMENT OF GENERAL SERVICES    :
and THE FRANK BRISCOE CO., INC.   :                **FILED**

WEINER, J.[2]                              March 24, 1997  MAR 24 1997

                MEMORANDUM OPINION AND ORDER
                                           NANCY MAYER-WHITTINGTON, CLERK
                                              U.S. DISTRICT COURT

        Consolidated Rail Corporation (Conrail) brought this

action for declaratory relief against the Commonwealth of Pennsyl-

vania Department of General Services (DGS) and The Frank Briscoe

Company, Inc. (Briscoe), seeking a partial stay of proceedings in

the Court of Common Pleas of Dauphin County.  Conrail seeks a

declaration that the subject matter of the underlying suit is

partly within the exclusive jurisdiction of this court[3], and that

_____

[1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

[2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

[3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

03/24/97  MON 16:47 FAX 202 273 0479      ADMIN/SERVICE                    ☒003
       MAR-2/-1997  11:57        JUDGE WEINER                          P.02/09

it has no liability as a successor or assignee of the Penn Central
Corporation.  Also before the court is a motion by the defendants
to dismiss.  This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[4]  For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. § 719(e)(2).  This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1973, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed.  At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion.  The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center.  Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

---

[4] The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

2

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
> . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.

Schedule E to the Bill of Sale provided:
> Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

Loftus Division of Eichleay Engineering (Loftus).  DGS filed a
second action in 1989 in which it named eight defendants; again
Conrail was not one of them.  It was again joined by Loftus.  In
1995, the two actions were consolidated for trial.

        The claims against Conrail arise out of the undisclosed
presence of an underground electrical ductbank, which was struck by
construction workers driving piles for the new Convention Center.
The ductbank was struck after Penn Central had conveyed the land to
DGS, and after its remaining interests were conveyed to Conrail.
The claims against Conrail seek to hold it liable both as a
successor to Penn Central, as well as for independent, post-
conveyance acts of its agents who were on site during the construc-
tion.  Successor liability is premised upon Penn Central's pre-
conveyance statements to DGS that all utilities had been abandoned,
Penn Central's failure to de-energize and relocate the power line,
and its failure to include the power line on construction drawings.
Direct liability is premised upon Conrail's unreasonable delay in
moving the power line after its accidental discovery, as well as
the fact that its on site agent failed to warn of the existence of
the power line.

        Reduced to its essence, Conrail argues that since the
successor liability issues presented in the Dauphin County action
are within the exclusive jurisdiction of this court, the Dauphin
County action must be stayed.  Pursuant to Section 209(g) of the
Rail Act, this court may stay or enjoin any action or proceeding in
any state or federal court, other than the United States Supreme

4

03/24/97  MON 16:48 FAX 202 273 0479      ADMIN/SERVICE                    ☒006
       MAR-24-1997  13:34        JUDGE WEINER                              P.01/03

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.    45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).   Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

        Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

        It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

                                    5

court's conveyance order, or the conveyance documents; and is
within our jurisdiction.  While both sides point to our decisions
in Penn Central v. United States, supra and Consolidated Rail Corp.
v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as
support for their jurisdictional arguments, we find this action is
far more simple than the situations presented there.  In both Penn
Central and Consolidated Rail, we were faced with the interplay of
the Rail Act and a second statutory scheme, the Comprehensive
Environmental Response, Compensation and Liability Act, as amended
by the Superfund Amendments and Reauthorization Act, 42 U.S.C.
§9601, et seq.  Finding that, in enacting CERCLA, Congress intended
its liability provisions to apply notwithstanding any other
provision of law, we concluded that CERCLA was an exception to the
fresh start policy embodied in the Rail Act.  While we refused to
completely exonerate Conrail from post-conveyance CERCLA liability,
we reconciled the two statutory schemes by making clear that
pursuant to the Rail Act, liability for pre-conveyance environmen-
tal contamination belonged to Penn Central and not Conrail.

      Here, there is no other counterbalancing statutory scheme
at issue.  As we read the underlying pleadings, liability is
premised upon common law contract and tort theories, seeking, inter
alia, to hold Conrail responsible as corporate successor for Penn
Central's acts and omissions.  The fresh start policy embodied in
the Rail Act, and incorporated into the conveyancing documents,
creates a bright line date upon which the liability of Penn Central
ended and the liability of Conrail began.  Congress mandated that

there be no successor liability hindering the future financial well being of the newly created Conrail. Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished. However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it. As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION    :
                                 :
                                 :
                                 :
            v.                   :      Special Court
                                 :.     Regional Rail Act
                                 :      C.A. NO. 97-RR-01
                                 :
COMMONWEALTH OF PENNSYLVANIA     :
DEPARTMENT OF GENERAL SERVICES   :        **FILED**
and THE FRANK BRISCOE CO., INC.  :

                                         MAR 2 4 1997

JUDGMENT ORDER               NANCY MAYER-WHITTINGTON, CLERK
                                         U.S. DISTRICT COURT

The motion to dismiss defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc. is DENIED.

The motion of plaintiff Consolidated Rail Corporation to stay is GRANTED.

Judgment on the merits is ENTERED in favor of plaintiff Consolidated Rail Corporation and against defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc.

The court DECLARES that pursuant to the conveyance orders issued by this court and the conveyance documents executed thereunder, there is no successor liability of Consolidated Rail Corporation for the acts and omissions of the Penn Central Transportation Company for the period prior to April 1, 1976 as asserted in the pleadings filed in the consolidated actions

8

03/24/97  MON 16:49 FAX 202 273 0479          ADMIN/SERVICE                    ☒010

MAR-24-1997  12:01          JUDGE WEINER                                    P.09/09

captioned <u>Commonwealth of Pennsylvania, Department of General</u>
<u>Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associ-</u>
<u>ates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of
Common Pleas of Dauphin County, Pennsylvania.

    IT IS SO ORDERED.

_____
    CHARLES R. WEINER

9

# EXHIBIT

# C



## BURNS, WHITE & HICKTON

A LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

Jason J. Cervone
Attorney at Law

(412) 995-3034
jcervone@bwhllc.com

Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

(412) 995-3000 • FAX (412) 995-3300

August 7, 2007

The Honorable Allen L. Tereshko
Complex Litigation Center
Court of Common Pleas of
Philadelphia County
Room 622, City Hall
Philadelphia, PA 19107

**CONTROL #** 084280

**Due Date:** **August 7, 2007**
**Answer:** **August 24, 2007**
**Reply:** **August 29, 2007**

Attn:   Motions Clerk - Donna Candelora, Esq.

Re:   Asbestos Litigation – 2007 Trial Group 2153 – Kline/Specter (Mesothelioma) Group
      Gerard H. Ritter v. Consolidated Rail Corporation, et al.
      PCCP No. 000467, June Term, 2005
      Counsel for Plaintiffs, Lee B. Balefsky, Esquire
      Counsel for Defendants, David A. Damico, Esquire

ASBESTOS LITIGATION

### DEFENDANT CONSOLIDATED RAIL CORPORATION'S
### PROTECTIVE MOTION FOR SUMMARY JUDGMENT

Dear Judge Tereshko:

In accordance with this Court's Abbreviated Motion Practice, Defendant Consolidated Rail Corporation hereby submits the following Protective Motion for Summary Judgment pursuant to Pennsylvania Rule of Civil Procedure 1035.2. Oral argument is requested if this Motion is opposed.

531 Plymouth Road
Suite 500
Plymouth Meeting, PA 19462
(610) 832-1111 • FAX (610) 941-1060

502 Carnegie Center
Suite 103
Princeton, NJ 08540
(609) 987-0616 • FAX (609) 987-0070

The Maxwell Centre
32-20th Street
Wheeling, WV 26003
(304) 233-9500 • FAX (304) 233-1363

www.bwhllc.com

## STATEMENT OF FACTS

On June 8, 2005, Gerard H. Ritter (hereinafter "Decedent") and his wife, Alice K. Ritter (hereinafter collectively referred to as "Plaintiffs"), filed a Complaint against numerous defendants, including Consolidated Rail Corporation (hereinafter "Conrail").[1] Plaintiffs allege that during the course of Decedent's railroad employment, he was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (hereinafter "FELA"). Plaintiffs further contend that as a result of this alleged exposure, Decedent developed mesothelioma and died on July 20, 2006.

Decedent worked for the Delaware, Lackawanna and Western Railroad from 1941 to 1942, and again from 1945 to 1960. Thereafter, Decedent was employed by the Erie Lackawanna Railroad from 1960 through 1967, and from 1971 through 1976.[2] Finally, Decedent was employed by Conrail from 1976 until his retirement in 1981. As evidenced by the Master Long Form Complaint, Plaintiffs seeks to impose corporate successor liability against Conrail by virtue of the erroneous belief that Conrail is the "purchaser of and successor to" Erie Lackawanna Railway Company (hereinafter "Erie Lackawanna") and is therefore liable for any injuries arising from Decedent's employment with Erie Lackawanna. *See* Plaintiffs' General Master Long-Form Complaint at 42-43.

Because Conrail believes that the successorship issues raised herein fall within the exclusive jurisdiction of the United States District Court for the District of Columbia, exercising the authority of the Special Court, Conrail is concurrently filing a Declaratory Judgment Action with the District Court seeking a declaration that Conrail is not liable as a successor-in-interest for Erie Lackawanna's FELA claims. Nevertheless, even absent a declaration on this issue, the plain language of the Regional Rail Reorganization Act of 1973 (hereinafter "Rail Act"), as well as the applicable case law, demonstrate the clear Congressional mandate prohibiting successor liability from hindering Conrail's future financial well-being. The "fresh start" policy embodied in the Rail Act, and incorporated into the conveyancing documents, creates April 1, 1976 as a bright line date upon which the liability of Erie Lackawanna ended and the liability of Conrail began. In other words, Erie Lackawanna remains exclusively liable for all acts occurring prior to April 1, 1976, and Conrail becomes liable only for its own action occurring after April 1, 1976. Thus, to the extent that the underlying action seeks to hold Conrail liable as a successor-in-interest for Erie Lackawanna's conduct, that liability has been legally extinguished.

While the Rail Act evidences a Congressional intent to preclude imposition of common law successor liability on Conrail, Plaintiffs' claims also fail under Pennsylvania common law successor liability principles. Without any basis under federal or state law for Plaintiffs' successorship claims, Conrail cannot be held liable for the acts, commissions, omissions, injuries

---

[1] In April, 2007, Gerard A. Ritter and Susan Norek were substituted as Plaintiffs as co-Executors of Decedent's estate.

[2] In 1960, the Delaware, Lackawanna and Western Railroad Company merged with the Erie Railroad to become the Erie Lackawanna Railroad Company. For the purpose of this Motion, all references to Erie Lackawanna include the merged Delaware, Lackawanna and Western Railroad Company.

or damages of Erie Lackawanna, and is entitled to summary judgment on all claims arising prior to April 1, 1976, pursuant to Pennsylvania Rule of Civil Procedure 1035.2.[3]

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue of any material fact as to a necessary element of the cause of action…which could be established by additional discovery…" Pa.R.Civ.P. 1035.2. In passing, upon a motion for summary judgment, a court must examine the record in the light most favorable to the non-moving party and resolve all doubt against the moving party. *Blean v. Gateway Professional Center Associates*, 431, Pa. Super. 145, 636 A.2d 172 (1993). Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion [that] no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Burman v. Golay & Co., Inc.*, 616 A.2d 657, 658 (Pa. Super. Ct. 1992). While the burden is on the moving party to prove that no genuine issue of fact exists, *Accu-Weather v. Prospect Communications*, 644 A.2d 1251, 1254 (Pa. Super. Ct. 1994), when the moving party carries its initial burden, the adverse party may not rest upon the allegations or denials contained in the pleadings, but must respond by showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment should be entered in favor of the moving party. *Ertel v. Patriot-News Co.*, 544 Pa. 93, 674 A.2d 1038 (Pa.1996).

## ARGUMENT

**A.    The United States District Court for the District of Columbia has Exclusive Jurisdiction to Determine the Successorship Issues Arising From the Rail Act.**

Concurrent with this Protective Motion for Summary Judgment, Conrail filed with the United States District Court for the District of Columbia, exercising the authority of the Special Court,[4] a Complaint for Declaratory Relief and a Motion for a Partial Stay of the Proceedings in the Court of Common Pleas Philadelphia County, PA. *See* filed Complaint for Declaratory Relief and Motion for a Partial Stay of the Proceedings in the Court of Common Pleas Philadelphia, PA (*Consolidated Rail Corporation v. Gerard H. Ritter*, Case No. 1:07-CV-01370), attached hereto as Exhibits A and B, respectively. Conrail has also filed with this Court a concomitant Motion for Stay Pending Determination of the Successorship Issue with the United States District Court.

As fully briefed in Conrail's Motion for Stay, pursuant to Section 209(g) of the Rail Act, the Special Court may stay or enjoin any action or proceeding in any state court, if such action is contrary to the provisions of the Rail Act or an order of the Special Court. 45 U.S.C. § 719(g). As the terms of the Rail Act and the conveyancing documents between Erie Lackawanna and Conrail are central to the successorship issues herein, Conrail respectfully suggests that the

---

[3] Conrail has also filed a separate motion for summary judgment with this Court based on the lack of exposure testimony during Decedent's 1976-1981 employment with Conrail.

[4] Under Rail Act Section 209(b), Congress created a Special Court generally to interpret its conveyance orders and to determine delineated claims under the provisions of the Rail Act. 45 U.S.C. § 719(b)(1). Congress subsequently abolished the Special Court and, effective January 17, 1997, transferred all jurisdiction and other functions of the Special Court to the United States District Court for the District of Columbia. 45 U.S.C. § 719(b)(2).

subject matter of the underlying motion is within the exclusive jurisdiction of District Court. However, to ensure that this issue is adequately and fully preserved, Conrail is also raising this question in the context of the instant summary judgment motion.

**B.    The Plain Language of the FELA Precludes Successor Liability.**

The FELA does not provide Plaintiffs with a cause of action against Conrail for Decedent's employment with Erie Lackawanna from 1941-1976. The relevant language of the FELA provides that "every common carrier by railroad...shall be liable in damages to any person suffering injury while he is employed by such carrier." 45 U.S.C. § 51 (emphasis added). Simply put, if an injured person was not in the employ of the defendant, he is not entitled to recovery under the FELA. *See Stevenson v. Lake Terminal R. Co.*, 42 F.2d 357, 359 (6th Cir. 1930).

In this case, it is undisputed that Decedent was only employed by Erie Lackawanna during the 1941-1976 time period. Accordingly, he could not have not suffered any injury "while employed by" Conrail during that period of employment. Absent an assumption of the FELA liabilities, the plain language of the FELA precludes Conrail from being held liable for of any injuries resulting from the employment of Decedent with Erie Lackawanna.

**C.    The Rail Act Precludes Successor Liability for Property Conrail Acquired Thereunder.**

The early 1970s found the railroad industry in the northeastern United States in a crisis. Railroads would routinely enter bankruptcy and languish there, unable to form acceptable reorganization plans. 45 U.S.C. §701(a)(2) and (a)(3). Faced with the possible disappearance of privately owned railroad service from the entire Northeastern United States, Congress passed the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. §741, *et seq.* Under the Rail Act, on April 1, 1976, rail properties of various bankrupt railroads were conveyed to the newly formed Consolidated Rail Corporation. 45 U.S.C. §§ 741, 743.

One of the railroads whose assets were acquired by Conrail under the Rail Act was Erie Lackawanna, which had filed for bankruptcy in June of 1972. *In re Erie Lackawanna Railway Co.*, 803 F.2d 881, 882 (3rd Cir. 1986). Erie Lackawanna ceased all rail operations on April 1, 1976 and conveyed the bulk of its rail properties to Conrail at that time. It remained in reorganization until November 30, 1982, when it was discharged from bankruptcy as Erie Lackawanna Inc. so that it might "liquidate its remaining assets as expeditiously as possible." *Id.*

Notably, and in an effort to prevent successor liability from hindering the financial well-being of Conrail, Congress provided in Section 303 of the Rail Act that the assets of the bankrupt railroads were to be transferred "free and clear of any liens or encumbrances, except certain types of leases." 45 U.S.C. § 743(b)(2). Any recovery in contract, tort or otherwise for the conduct of the insolvent railroads was legislatively and contractually apportioned to be satisfied out of the remaining assets of the bankrupt railroad. *See generally Penn Central Corp. v. United States*, 862 F.Supp. 437, 462-64 (Sp.Ct. R.R.R. 1994). The conveyances were drawn with the

intent of providing the successor railroad with a clean slate as of the date that Conrail took possession of the rail properties from the trustees. *Id.* This "fresh start" policy embodied in the Rail Act and incorporated into the conveyancing documents, created April 1, 1976 as a bright line date upon which the liability of the bankrupt railroads ended and the liability of Conrail began. As such, to the extent that the underlying action seeks to hold Conrail liable as Erie Lackawanna's successor-in-interest, both the legislative and case history confirm that any such liability has been legally extinguished.

Indeed, federal courts have held that that the legislative intent of the Rail Act is both compelling and clearly reflected in the Act's structure and legislative history. *Schweitzer v. Consolidated Rail Corp.*, 65 B.R. 795, 801 (E.D. Pa. 1986). In *Schweitzer,* like the present case, railroad employees brought personal injury claims against a reorganized railroad under the FELA, subsequent to the consummation dates of the debtor company. The employees alleged that because their asbestos-related injuries did not manifest until after the consummation dates, their claims had not been discharged in the bankruptcy proceedings. *Id.*

Relying heavily on legislative intent, the *Schweitzer* Court stated that Congress intended to "revive the severely distressed northeastern rail system" by "creating a new, viable system from the bits and pieces of the old...Congress did not intend to saddle a wholly-new entity that was created by Congress to serve the public interest with non-discharged claims against the debtor." *Id.* at 800-801. Reasoning that imposing such liability on Conrail would "wreak havoc on the precise delegation of responsibility that Congress fashioned," the Court held:

> Congress did not intend to impose on Conrail the primary responsibility for non-discharged FELA claims which arose from the debtor's pre-conveyance conduct.

*Id.* at 801-802.

The issue of whether a FELA claim could be brought against a surviving entity has also been addressed by the United States Court of Appeals for the Sixth Circuit in *In re Erie Lackawanna Ry. Co.* 803 F.2d 881 (6th Cir. 1986). In *Erie Lackawanna,* former Erie Lackawanna employees brought asbestos-related personal injury actions against the railroad, which had been previously reorganized under the Bankruptcy Act. *Id.* at 882. The employees' injuries did not manifest until after the consummation of the reorganization. Nevertheless, prosecution of the employees' actions was enjoined by the district court which held that claims against Erie Lackawanna had been discharged in the reorganization. *Id.*

The Sixth Circuit reviewed the statutory language of both the Rail Act and Section 77 of the Bankruptcy Act. In applying these two statutes to the circumstances surrounding the bankruptcy and the claims brought pursuant to the FELA, the Court determined that Erie Lackawanna's bankruptcy was a "restructuring similar to a liquidation" whereby the debtor's assets were used to satisfy the claims of the creditors, and debtor's previous business ceased to exist. *Id.* at 884. Accordingly, the Court upheld the district court ruling that the employees' FELA claims were discharged pursuant to the Erie Lackawanna bankruptcy.

In an analogous case, the Third Circuit recognized that in the acquisition of rail properties under the Rail Act, Conrail <u>did not</u> acquire the insolvent railroads' legal liabilities. *Zulkowski v. Consolidated Rail Corp.*, 852 F.2d 73 (3rd Cir. 1988).  In *Zulkowski,* the Court considered whether Conrail was the successor-in-interest to the insolvent railroad companies.  The plaintiff, Stanley Zulkowski, had been employed by the Central Railroad Company of New Jersey (hereinafter "CNJ") whose rail properties, like those of Erie Lackawanna, were acquired by Conrail pursuant to the Rail Act.  After CNJ emerged from bankruptcy in 1979 as Central Jersey Industries, Inc. (hereinafter "CJI"), Zulkowski brought an FELA claim against CJI and Conrail. CJI moved for summary judgment on Conrail's cross-claim for indemnification, arguing that Conrail, having acquired CNJ's railroad properties, was a successor to CNJ.

Although dicta, the Third Circuit's consideration of Conrail's alleged successorship is instructive. *Zulkowski,* 852 F.2d at 76. CJI argued that the Rail Act meant to impose successor liability on Conrail for tort actions, comparing it to a reorganized company emerging from bankruptcy. *Id.* at 76. The court rejected this argument out of hand stating that nowhere in the Rail Act could it find "any provision transferring the liability for a claim made here from an entity reorganized under the Act to Conrail." *Id.* Noting that the allocation of rail assets to Conrail did not reflect any agreement or intention to assume its liabilities, the Court held that Conrail could not be held liable as the bankrupt railroad's successor-in-interest.

Finally, in a case closely akin to the present matter, the successorship issue was also decided by the United States District Court for the Western District Court of Pennsylvania in *Lewis v. Consolidated Rail Corporation.* A copy of the *Lewis* Memorandum Opinion is attached hereto as Exhibit C.  In *Lewis,* Plaintiff initiated a FELA action against Conrail alleging occupational hearing loss related to his employment with Erie Lackawanna. Plaintiff alleged that Conrail was liable for damages related to his injury as a successor-in-interest to Erie Lackawanna.

In deciding that Conrail should not be held liable for Plaintiff's FELA claim resulting from his employment with Erie Lackawanna, the District Court relied heavily on *In the Matter of Penn Central Transportation Company* 944 F.2d. 164, 169 (3rd. Cir. 1991), in which the Third Circuit held that the unique facts surrounding the Erie Lackawanna bankruptcy proceedings constituted a "liquidating plan of reorganization," and the general purpose to be carried out by the reorganized company was to liquidate the assets as quickly as practicable. *Penn Central,* 944 F.2d at 169. In determining that the Erie Lackawanna proceedings more closely resembled a liquidation, the *Penn Central* Court held that all claims asserted were discharged. *Id.* Relying on the Third Circuit reasoning, the *Lewis* Court similarly held that Conrail should not be held liable for any acts, commissions, omissions injuries or damages occurring before April 1, 1976. *Lewis Memorandum Opinion* at 5.

The successorship issue in this matter is nearly identical to the above-referenced cases. Erie Lackawanna was a railroad company reorganized with the purpose of liquidating its assets, which at that time had already been conveyed to Conrail under the Rail Act.  Likewise, Plaintiffs are seeking to recover from Conrail for harm Decedent purportedly suffered while working for Erie Lackawanna, prior to the conveyance of the railroad assets. In line with the cases refusing to extend the FELA liability of Conrail, this Court should reject any claims prior

to April 1, 1976, because as the plain language of the Rail Act makes clear, Conrail has no predecessors and is not a successor-in-interest to any other entity.

**D.    Alternatively, Plaintiffs' Claims Fail Under Pennsylvania Common Law Successor Liability Provisions.**

As evidenced above, the Rail Act and subsequent legislation created a comprehensive federal scheme designed to revitalize freight railroads in the region. *Consolidated Rail Corp. v. Reading Co.*, 654 F. Supp 1318, 1330 (Sp.Ct.R.R.R.A. 1987). While no court has expressly determined whether that legislative scheme evidences a Congressional intent to preclude imposition of common law successor liability on Conrail,[5] the preemption issue is not essential to the matter at hand as Plaintiffs' claims also fail under Pennsylvania common law successor liability principles.

The well-established general rule of successor liability in Pennsylvania provides that "the purchasing...company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Continental Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (quoting *Hill v. Trailmobile, Inc.*, 603 A.2d 602, 605 (Pa. Super. Ct. 1992))(emphasis added). Equally well recognized in Pennsylvania are the exceptions to this general rule. Namely, a successor corporation may be held liable if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.[6] *Id.*

Analysis of these factors supports the proposition that Conrail is not liable for the FELA obligations of Erie Lackawanna.

1.    <u>Conrail did not expressly or impliedly agree to assume liability.</u>

The Rail Act specifically provided that the rail assets of the bankrupt railroads be conveyed to Conrail "free and clear of any liens and encumbrances." Thus, any preconveyance liability of an estate of a railroad in reorganization remained the obligation of the estate of the respective debtor and was neither expressly nor impliedly assumed by Conrail.

---

[5] In *Consolidated Rail Corp. v. Reading Co.*, 654 F. Supp 1318 (Sp.Ct.R.R.R.A. 1987), the Special Court declined to specifically decide the preemption issue, holding that the provisions of the Rail Act are neither a sword for the employee claimants, nor a shield for Conrail.

[6] This Commonwealth has also recognized a "product-line" exception to the general rule against successor liability, which permits successor liability to be imposed for injuries caused by defective products manufactured by a predecessor if the successor continues to manufacture the product. *See Hill*, 603 A.2d at 605-06; *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 110 (1981). However, this exception clearly has no applicability in the present case.

2.    The transaction between Conrail and Erie Lackawanna was not a consolidation or de facto merger.

A de facto merger is a merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor, and (4) a continuity of management, personnel, physical location, aspects, and general business operation. *Com. v. Lavelle,* 555 A.2d 218, 227 (Pa.Super. Ct. 1989). In this case, Erie Lackawanna was already a bankrupt entity, which reorganized for the sole purpose of liquidating its assets in accordance with an order of the bankruptcy court. Conrail did not purchase Erie Lackawanna, and it specifically did not assume the liabilities and obligations ordinarily necessary to continue the predecessor's business operations. Consequently, Conrail and Erie Lackawanna did not undergo a merger, either *de facto* or otherwise, but rather participated in a federally-mandated reorganization process, in which assets and certain specified liabilities were conveyed. Those conveyances did not include FELA claims against Erie Lackawanna.

2.    Conrail is not merely a continuation of Erie Lackawanna.

Conrail did not continue the exact operations of Erie Lackawanna. In fact, as stated by the court in *In re Erie Lackawanna,* "[t]he restructuring of Erie was the antithesis of preserving a going concern." 803 F.2d at 884. Clearly, as Conrail was designed and created as a new railroad with a new name; the mere continuation concept has no merit in this case. Although many of the employees of the bankrupt railroad may have hired by the new consolidated entity, there was no continuation of management or ownership sufficient to meet the requirements of this prong.

4.    The transaction was not fraudulently entered into to escape liability.

There is no evidence of record indicating that the reorganization proceedings were used to escape liability. Similarly, there has been no finding by any court of law that the Rail Act was entered into fraudulently. To the contrary, the Rail Act provided the terms for Conrail to acquire and operate the rail properties of the insolvent railroads, in order to integrate these properties into an efficient national rail transportation system. The Congressional mandate that the transaction be "free and clear of any liens or encumbrances" negates the possibility that fraud was utilized to escape liability. *See* 45 U.S.C. § 743(b)(2).

5.    The transfer was not without adequate consideration and provisions were made for creditors of the selling corporation.

The issue of consideration is irrelevant to the transaction at hand, as Conrail did not purchase the assets of Erie Lackawanna. Instead, Conrail acquired those assets in a federally-mandated reorganization process, in which Erie Lackawanna's assets were thereby conveyed.

Moreover, it is undisputed that provisions were established for the creditors of Erie Lackawanna. As stated in *In re Erie Lackawanna,* Erie Lackawanna's bankruptcy was a

restructuring similar to a liquidation <u>whereby the debtor's assets were used to satisfy the claims of the creditors.</u>  803 F.2d at 884.

Thus, by failing to fall under any of the recognized exceptions, Plaintiffs have also failed to produce any facts suggesting that the well-settled law should not apply here. Plaintiffs' mere allegations as to successor liability remain wholly unsupported by both federal and Pennsylvania common law.

**E.    In the Alternative, Should the Court Deny Conrail's Motion for Summary Judgment, the Court Should Certify the Successorship Question For Immediate Interlocutory Appeal.**

If this Honorable Court denies Conrail's Motion for Summary Judgment, Conrail submits that considerations of judicial economy and efficiency merit that this action be stayed pending resolution of the legal question presented to the Superior Court.  This Court should not continue to exercise its jurisdiction to rule on important procedural and substantive matters, when the outcome of the case depends on the resolution of the issue as to whether Conrail is a successor-in-interest to Erie Lackawanna.  These weighty considerations, as well as the expense of time and resources by the parties herein, warrant staying this proceeding pending determination of the legal issue by the Superior Court.

**1.    Whether Conrail is a Successor-in-Interest to Erie Lackawanna is a "Controlling Issue Of Law" For Which Immediate Appeal is Proper Pursuant To Pa. R. A. P. 1311(b)**

Should this Court deny the instant motion, Conrail requests, in the alternative, that this Honorable Court execute the order in conformity with the rule applicable to interlocutory appeals by permission, Pa. R.A.P. 1311.  Rule 1311(b) authorizes the Court to include in its order the requisite language from 42 Pa. Cons.Stat. § 702(b), namely, that "such order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of the matter, it shall so state in the order." 42 Pa. Cons.Stat. § 702(b).  The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

Conrail requests that the controlling issues of law should read as follows:

<u>Whether Consolidated Rail Corporation can be a successor-in-interest to the Erie Lackawanna Railway Company under the FELA, the Rail Act or Pennsylvania Common Law?</u>

Resolution of this controlling issue will materially advance the ultimate resolution of this case.  Before proceeding to trial on the merits, it is in the interest of all parties, as well as this Court, to allow a full and final resolution of this legal issue.  Otherwise, the Court risks expending time, energy and resources on a cause of action where no genuine issue would remain for trial.  This is an important issue that arises not only in this case, but other cases throughout

the Commonwealth of Pennsylvania. Furthermore, public policy concerns clearly dictate that this legal issue be resolved in an expedited manner.

A prompt and timely resolution of the legal issue raised in Conrail's present motion will clearly advance the ultimate determination of this matter. Accordingly, Conrail respectfully requests that this Honorable Court enter the Interlocutory Order setting forth the statement prescribed by 42 Pa.C.S. § 702(b).

## 2.    Further Proceedings In This Case Should Be Stayed Pending The Outcome Of An Appeal to the Superior Court

In addition to certifying this case for immediate appeal to the Superior Court, Conrail also requests that this Court stay further proceedings pending the outcome of the appeal. The Court may, within its discretion, stay matters pending an appeal when: (i) the petitioner makes a strong showing that he is likely to prevail on the merits; (ii) the petitioner shows that without the requested relief, he will suffer irreparable injury; (iii) the issuance of a stay will not substantially harm other interested parties in the proceedings; and (iv) the issuance of a stay will not adversely affect the public interest. *Public Utility Comm'n v. Process Gas Consumers Group*, 502 Pa. 545, 552-53, 467 A.2d 805, 808-09 (1983) (citations omitted); *see also* Pa. R. A. P. 1732(a) (applications for a stay pending appeal must ordinarily be made to the trial court in the first instance).

With respect to the first factor, the Supreme Court in *Process Gas Consumers Group* noted that this requirement should not be an inflexible rule, but should instead be considered in conjunction with the other stated factors. 467 A.2d at 554 n.2. The proper test, as noted, is whether the applicant has presented "a substantial case on the merits, even though [the trial court] disagrees." *Id.* Here, Conrail has demonstrated that, at the least, based on other jurisdictions, the legal issue presented in this case has been ultimately decided in favor of the Conrail.

As for the second factor, there is a possibility of irreparable harm to Conrail if the Court does not grant a stay, based on the fact that it will then be forced to litigate an unresolved matter. Potential harm to other parties, also counsels in favor of a stay. Suits will continue to be brought, in this jurisdiction, which will cost the Court, the taxpayers and the parties unnecessary expenses. Finally, the fourth factor, potential harm to the public interest, also weighs in favor of granting the stay. As noted earlier, permitting this case to go forward will result in a waste of valuable judicial resources.

For all of these reasons, Conrail respectfully submits that a stay pending appeal of the underlying evidentiary issue to the Superior Court is warranted as being in the best interests of the parties and should be granted.

**CONCLUSION**

WHEREFORE, Consolidated Rail Corporation respectfully requests that its Motion for Summary Judgment be granted and that all claims against Consolidated Rail Corporation be dismissed with prejudice. Alternatively, Consolidated Rail Corporation, respectfully request that if this Honorable Court denies its Motion for Summary Judgment, that the Order include the statement required by 42 Pa. Cons. Stat. §702(b) allowing for an interlocutory appeal. Finally, Consolidated Rail Corporation respectfully requests that this Court stay all proceedings in this case pending disposition of this appeal, pursuant to Pa. R. A. P. 1732(a).

Respectfully submitted,

BURNS, WHITE & HICKTON, LLC

By: _____
David A. Damico, Esquire
Pa. I.D. No. 40987

Jason J. Cervone, Esquire
Pa. I.D. No. 91173

Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212

Attorneys for Defendant
Consolidated Rail Corporation

cc:     Lee B. Balefsky, Esquire
          All Known Counsel of Record

GERARD H. RITTER AND : COURT OF COMMON PLEAS
ALICE K. RITTER, HIS WIFE : PHILADELPHIA COUNTY
: June Term, 2005
          Plaintiffs, :
: No. 000467
    vs. :
: ASBESTOS CASE
CONSOLIDATED RAIL :
CORPORATION, et al., :
:
        Defendants. :

### ORDER

AND NOW, this ____ day of _____, 2007, upon consideration

of the Motion for Summary Judgment of Defendant Consolidated Rail Corporation, it is hereby

ORDERED and DECREED that Defendant's Motion for Summary Judgment is GRANTED, and

the Court finds as a matter of law that Consolidated Rail Corporation is not liable for any acts,

commissions, omissions, injuries and or damages occurring before April 1, 1976.

BY THE COURT:

_____

Hon. Allen L. Tereshko

| | | |
|---|---|---|
| GERARD H. RITTER AND | : | COURT OF COMMON PLEAS |
| ALICE K. RITTER, HIS WIFE | : | PHILADELPHIA COUNTY |
| | : | June Term, 2005 |
| Plaintiffs, | : | |
| | : | No. 000467 |
| vs. | : | |
| | : | ASBESTOS CASE |
| CONSOLIDATED RAIL | : | |
| CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER PURSUANT TO PA. R.A.P. 1311 AND 42 PA. C.S.A. § 702

And now this __ day of _____ 2007, upon consideration of Consolidated Rail

Corporation's Motion for Summary Judgment, and alternatively, Request for an Appeal of the

Interlocutory Order by permission pursuant R.A.P. 1311 authorizing the Court to include the

language from 42 Pa. Const. Stat. §702(B), it is hereby ORDERED, ADJUDGED and

DECREED that Consolidated Rail Corporation's Motion for Summary Judgment is DENIED.

This Court further finds that there exists a substantial ground for a difference of opinion and an

immediate appeal will materially advance the ultimate determination of this matter. The

controlling question as to which there exists a substantial ground for a difference of opinion is:

> Whether Consolidated Rail Corporation can be a successor-in-interest to the Erie
> Lackawanna Railway Company under the FELA, the Rail Act or Pennsylvania
> Common Law?

It is ORDERED that the proceedings in this case be immediately STAYED so that Consolidated

Rail Corporation may pursue an immediate appeal to the Superior Court.

BY THE COURT:

_____

Hon. Allen L. Tereshko

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Protective Motion for Summary Judgment, was served via Hand Delivery this 7th day of August, 2007, upon counsel for Plaintiffs as follows:

Lee B. Balefsky, Esquire
KLINE & SPECTER
1525 Locust Street
Philadelphia, PA 19102
Attorney for Plaintiffs

All Known Counsel (via email)

Jason J. Cervone, Esquire

## **CERTIFICATE OF GOOD FAITH**

I hereby certify that I have spoken with opposing counsel in an effort to resolve the specific dispute at issue, and despite our efforts have been unable to do so.

Jason J. Cervone, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION          :
2001 Market Street                      :
Philadelphia, PA  19103

                         Plaintiff,          Case: 1:07-cv-01370
                                 Assigned To : Urbina, Ricardo M.
                v.          Assign. Date : 7/27/2007
                                 Description: General Civil

GERARD A. RITTER AND SUSAN R. NOREK,          :
Executors for the Estate of GERARD H.          :
RITTER, deceased          :
908 South Webster Avenue          :
Scranton, PA  18505          :
                   Defendants          :

## COMPLAINT FOR DECLARATORY RELIEF

        Consolidated Rail Corporation ("Conrail"), by and through its undersigned

counsel, brings this action for Declaratory Relief in order to stay the action of defendants Gerald

A. Ritter and Susan Norek filed in the Court of Common Pleas of Philadelphia County,

Pennsylvania, and to invoke this Court's original and exclusive jurisdiction as the successor to

the Special Court-Regional Rail Reorganization Act over matters concerning claims of successor

liability asserted against Conrail.  In support thereof, Conrail avers as follows:

### THE PARTIES

        1      Plaintiff Conrail is a corporation organized under the laws of the

Commonwealth of Pennsylvania pursuant to Section 301 of the Regional Rail Reorganization

Act of 1973, as amended ("Rail Act", 45 U.S.C. § 701 *et seq.*), and has its principal place of

business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

**Exhibit "A"**

2.      Defendants Gerard A. Ritter and Susan R. Norek ("Defendants") are Executors of the Estate of Gerard H. Ritter (hereinafter "Decedent"). Defendants are residents of Pennsylvania.

## JURISDICTION

3.      This Court has original and exclusive jurisdiction over this action by virtue of Sections 209(e) and 209(g) of the Rail Act, 45 U.S.C. § 719(e), (g), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## THE PENNSYLVANIA ACTION

4.      On June 8, 2005, the Decedent and his wife, Alice Ritter, filed a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania (*Ritter v. Garlock, Inc., et al.*, No. 050600467) (hereinafter the "Pennsylvania Action") against numerous defendants, including Conrail. Defendants allege that during the course of Decedent's employment with the Delaware Lackawanna and Western Railroad and the Erie Lackawanna Railroad Company (hereinafter "Erie Lackawanna"), Decedent was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (hereinafter "FELA"). Defendant's complaint in the Pennsylvania Action is attached hereto as Exhibit A.

5.      The Pennsylvania Action seeks to impose successor liability on Conrail in connection with decedent's employment with Erie Lackawanna, by virtue of the erroneous belief that Conrail is the legal successor-in-interest to Erie Lackawanna and is therefore liable for any injuries arising from Decedent's employment with Erie Lackawanna.

## THE RAIL ACT AND THE CONVEYANCE OF ERIE LACKAWANNA'S ASSETS TO CONRAIL

6.      Conrail was created as a federally-funded takeover of the major railroad companies in the Northeast through the Rail Act, 45 U.S.C. § 701, *et seq.*

7.     Pursuant to Section 206 of the Rail Act, 45 U.S.C. § 716, the United States Railway Association ("USRA") developed the Final System Plan ("Plan") in which it designated that certain assets of Erie Lackawanna and other Northeast railroad companies were to be transferred to Conrail.

8.     Pursuant to Section 209(c) of the Rail Act, 45 U.S.C. § 719(c), the USRA certified to this Court the rail properties of Erie Lackawanna designated in the Plan were to be conveyed to Conrail.

9.     Pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743, this Court issued a Conveyance Order filed March 25, 1976 ("Conveyance Order") directing the trustees of Erie Lackawanna to execute documents, effective April 1, 1976, conveying certain of Erie Lackawanna's rail properties to Conrail "free and clear of any liens or encumbrances" under Section 303(b)(2) of the Rail Act, 45 U.S.C. § 743(b)(2). The Conveyance Order is attached hereto as Exhibit B.

10.    This Court has reinforced Congress's intent in declaring that the Rail Act provided Conrail with a legal and financial "fresh start" to commence a financially viable railroad operation. *See Penn Central Corp. v. United States*, 862 F. Supp. 437, 446 (S.C.R.R.R.A. 1994); *Consolidated Rail Corp. v. Commonwealth of Pa., Dep't of Gen. Svcs.*, No. 97-RR-01 (CRW) (D.D.C. 1997), attached hereto as Exhibit C.

11.    In light of the Rail Act's "fresh start" policy, this Court has concluded that the conveyance shields Conrail from successor liability arising from the acts or omissions of Erie Lackawanna and the other railroads which conveyed their rail properties to Conrail. *See Consolidated Rail Corp. v. United States*, 883 F. Supp. 1565, 1576-77 (S.C.R.R.R.A. 1995); *Penn Central Corp., supra*, 862 F. Supp. at 446.

12.     Conrail did not come into existence until April 1, 1976, when it was conveyed Erie Lackawanna's assets pursuant to the Rail Act.

13.     Defendant's have not submitted any evidence showing that the Decedent was exposed to asbestos during his Conrail employment.

14.     Pursuant to Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2), this Court has original and exclusive jurisdiction over actions involving the interpretation and implementation of conveyance orders entered by this Court and documents executed in accordance with those orders.

15.     Pursuant to Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this Court may stay or enjoin any action or proceeding in any State or Federal Court, other than the United States Supreme Court, if such action is contrary to the provisions of the Rail Act or any orders of this Court pursuant thereto.

16.     This Court has affirmed that it is the final arbiter of the correct interpretation of the Rail Act, the Final System Plan, and the orders and conveyance documents executed pursuant thereto. *See Consolidated Rail Corp., supra*, 883 F. Supp. 1565.

17.     To preserve its original and exclusive jurisdiction under the Rail Act, this Court has the power to stay FELA actions against Conrail which seek to impose successor liability on Conrail based upon alleged actions or omissions of Erie Lackawanna or other railroad companies that conveyed their rail assets to Conrail.

18.     Accordingly, the Pennsylvania Action directly contravenes the Rail Act, this Court's Conveyance Order and this Court's prior holdings. Conrail cannot be held liable as a successor to Erie Lackawanna.

-4-

19.    There is a case of actual controversy between Conrail and Defendants that is within this Court's original and exclusive jurisdiction, and that controversy has ripened to the point at which an affirmative declaration from this Court is needed. This Court is authorized, pursuant to the Declaratory Judgment Act, to declare the rights and other legal relations of the parties. *See* 28 U.S.C. § 2201(a).

20.    Given that the Rail Act and NRSA provide for exclusive jurisdiction in this Court for claims seeking to assert successor liability against Conrail, the District Court of the United States District Court for the District of Columbia sitting as the Special Court is the only Court that can provide the declaratory relief Conrail seeks.

21.    Direct liability cannot be asserted against Conrail for actions of Erie Lackawanna.

22.    Pursuant to the Rail Act, the Final System Plan established by the USRA, and the order of this Court directing the conveyance of Erie Lackawanna's assets to Conrail effective April 1, 1976, Conrail may not be held liable as a successor in liability for the alleged acts or omissions of Erie Lackawanna.

23.    No evidence supports the assertion that Decedent was exposed to asbestos during employment with Conrail.

WHEREFORE, Conrail respectfully requests:

(a)    that this Court stay the Pennsylvania Action pending the resolution of this action;

(b)    that this Court enter a final order declaring that Conrail has no liability as a successor in liability of Erie Lackawanna or any Railroad Predecessor;

(c)    that this Court enjoin Defendants from seeking to hold Conrail liable for any acts or omissions of Erie Lackawanna;

-5-

(d)     that this Court grant Conrail such other relief as may be
        appropriate under Count I.

Respectfully Submitted,

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
carpenterc@pepperlaw.com

Attorney for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

# EXHIBIT A

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION



By: Lee B. Balefsky, Esquire
I.D. #25321
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000
Fax: 215-735-0960
Attorney for Plaintiffs

Received via UPS Express
to Roger A. Petersen

| | |
|---|---|
| GERARD H. RITTER AND ALICE K. RITTER, H/W<br>908 SOUTH WEBSTER AVENUE<br>SCRANTON, PA 18505<br><br>Plaintiffs<br><br>vs.<br><br>GARLOCK, INC., ET AL.<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>June 2005<br>TERM 2005<br><br>NO.<br>ASBESTOS CASE    060467<br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Asbestos

Litigation in Philadelphia County Court of Common Pleas, filed as of October Term 1986, No. 8610-

0001. Pursuant to an Order dated July 30, 1986, and signed by the Honorable Richard B. Klein, the

following Short Form Complaint is utilized in this asbestos action.

1.     This Complaint involves the claims of the following persons:

    a.     Plaintiff: Gerard H. Ritter
       Date of Birth: 11/4/21
       Social Security: 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

    b.     Plaintiff-Wife: Alice K. Ritter
       Date of Birth: 3/20/28
       Social Security: 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

2.     The Defendants are those companies listed in the caption.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

3.    Plaintiffs hereby incorporate by reference the following Counts from the Master Long

Form Complaint:  Counts I, II, III, IV, VIII and X.

4.    Plaintiff's asbestos employment history is as follows:

a.    3/41 to 8/42
      12/45 to 1960
      Delaware Lackawanna and Western Railroad
      Scranton, PA
      Apprentice machinist, journeyman, air brake inspector

b.    1960-1967
      1971-1976
      Erie Lackawanna Railroad
      Jersey City, NJ
      Scranton, PA
      Hornell, NY
      Air brake inspector

c.    Consolidated Rail Corporation
      Scranton, PA
      1976-1981
      Air brake inspector

5.    Plaintiff was diagnosed on or about March 8, 2005, as having mesothelioma as a

result of his exposure to asbestos.

6.    Plaintiff smoked less than one pack of cigarettes per day from approximately 1942

to 1955.

7.    Plaintiff's wages during his last full year of employment were:

a.  To be supplied.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

8.    Plaintiff's dependents are as follows:

a.  Alice K. Ritter - Wife

KLINE & SPECTER, P.C.

BY: _____
LEE B. BALEFSKY, ESQUIRE
Attorney for Plaintiffs

## VERIFICATION

We, GERARD H. RITTER and ALICE K. RITTER, being duly sworn according to law, depose and state:

      1. We are the plaintiffs in this action;

      2. We verify that the statements made in the foregoing Complaint are true and correct to the best of our knowledge, information and belief; and

      3. We understand that the statements made in said Complaint are subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.


_____
GERARD H. RITTER

_____
ALICE K. RITTER

DATED: _05-20-05_

# EXHIBIT B

'ACHMENT C, SHEET 1



M-000063

<u>SPECIAL COURT REPORTER</u>

SPECIAL COURT

FILED

REGIONAL RAIL REORGANIZATION ACT OF 1973

MAR 25 1975

JAMES F. DAVEY, Clerk

```
                                    )
                                    )
        In the Matter of            ) Special Court
                                    ) Misc. No. 75-3(A)
Regional Rail Reorganization Proceedings )
                                    )
                                    )
```

<u>ORDER OF CONVEYANCE TO TRUSTEES OF</u>
<u>RAILROADS IN REORGANIZATION IN THE REGION</u>

Upon consideration that --

A. On March 12, 1975, the United States Railway
Association ("Association"), pursuant to Section 209(c)
of the Regional Rail Reorganization Act of 1973, as
amended ("Rail Act"), certified to this Court which rail
properties of railroads in reorganization in the region
are to be transferred to Consolidated Rail Corporation
("Corporation") and which rail properties of such
railroads are to be conveyed to certain profitable
railroads as defined in the Rail Act ("Profitable
Railroads"), and advised this Court which rail properties
of such railroads are to be conveyed to States or
responsible persons in accordance with Section 208(d)(2)
of the Rail Act; and

Doc. No. 14

ATTACHMENT J. SHEET 2

SPECIAL COURT REPORTER                    - 2 -                    M-000064

B.   on March 24, 1976, the Association filed with this Court a document supplementing and perfecting its March 12, 1976, certification of which rail properties of railroads in reorganization in the region are to be transferred to the Corporation and which rail properties of such railroads are to be conveyed to Profitable Railroads, States or responsible persons; and

C.   on March 22, 1976, the Corporation and the Association, pursuant to Sections 303(a)(1) and 306(a), respectively, of the Rail Act, deposited with this Court all of the stock and other securities of the Corporation and all of the Certificates of Value of the Association designated in the Final System Plan that are to be exchanged for the rail properties being transferred to the Corporation; and

D.   on March 22, 1976, each Profitable Railroad, State or responsible person, pursuant to Section 303(a)(2) of the Rail Act, deposited with this Court the compensation designated in the Final System Plan to be paid for the purchase of the rail properties being conveyed to such Profitable Railroad, State or responsible person; and

SPECIAL COURT REPORTER                    - 3 -

E.  the unusually large and complex conveyancing
that will occur pursuant to this Order can be expected
to result in a need for corrections, amendments or
supplements to the Conveyance Documents (as hereinafter
defined) and to this Order in order to carry out the
intent of the Final System Plan, such Conveyance
Documents and this Order;

NOW THEREFORE, pursuant to Section 303(b)(1) of
the Rail Act, it is hereby ordered:

Section 1.  Definitions

As used in this Order:

A.  "Certification" shall mean the Certification
(including all Appendices and documents submitted
therewith and made a part thereof) filed with this Court
by the Association on March 12, 1976, and on file in the
office of the Clerk of this Court at the United States
Courthouse in Washington, D.C.

B.  "Certification Supplement" shall mean the
Certification Supplement (including all Appendices and
documents submitted therewith and made a part thereof)
filed with this Court on March 24, 1976, and on file in

SPECIAL COURT REPORTER

M - 000065

the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

C. "Conveyance Document Addendum" shall mean the collection of documents denominated "Conveyance Document Addendum," which was submitted to this Court by the Association with and as a part of the Certification and Certification Supplement and is on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

D. "Conveyance Documents" shall mean the documents listed in the Conveyance Document Schedules (as hereinafter defined), except that the Conveyance Documents shall not include any document or part thereof filed with the Certification that has been superseded by any such document filed with the Certification Supplement. All maps referred to in the Conveyance Documents are contained in the Map Addendum (as hereinafter defined). All computer printouts of rolling stock and equipment inventory referred to in the Conveyance Documents are contained in the Rolling Stock and Equipment Addendum (as hereinafter defined).

SPECIAL COURT REPORTER

M-000067

- 5 -

E. "Conveyance Document Schedules" shall mean the Schedules contained in Appendices I-A, II-A and IV of the Certification and Certification Supplement, which Schedules identify the Conveyance Documents.

F. "Final System Plan" shall mean the Plan prepared by the Association which became effective on November 9, 1975, pursuant to Section 208(a) of the Rail Act (a certified copy of which was filed with this Court as Appendix O-A to the Certification), together with the Supplemental Report to the Plan dated September 18, 1975, described in Section 208(d)(1) of the Rail Act (a certified copy of which was filed with this Court as Appendix O-B to the Certification), the Official Errata Supplement to the Plan dated December 1, 1975, described in Section 208(d)(1) of the Rail Act (a certified copy of which was filed with this Court as Appendix O-C to the Certification), the Notice containing further designations to the Plan, dated February 25, 1976, described in Section 208(d)(3) of the Rail Act (a certified copy of which was filed with this Court as Appendix O-D to the Certification), and the document filed as Appendix O-E to the Certification, which document contains the further designations of rail properties described in Section 208(d)(2) of the Rail Act.

SPECIAL COURT REPORTER          - 5 -          M-000068

G.  "Transferor" shall mean the person or persons
identified as the Transferor, Grantor or Assignor in a
Conveyance Document.

H.  "Transferee" shall mean the person or persons
identified as the Transferee, Grantee or Assignee in a
Conveyance Document.

I.  "Map Addendum" shall mean the collection of
maps denominated "Map Addendum" which was submitted to
this Court by the Association with and as a part of the
Certification and Certification Supplement and is on file
in the office of the Clerk of this Court at the United
States Courthouse in Washington, D.C.  Copies of maps
from the Map Addendum which are referred to in the
Conveyance Documents relating to a particular Transferor
are also on file with the United States District Court
having jurisdiction over such Transferor.

J.  "Rolling Stock and Equipment Addendum" shall
mean the collection of rolling stock and equipment
inventory computer printouts denominated "Rolling Stock
and Equipment Addendum" which was submitted on March 12,
1976, to this Court by the Association with and as a part
of the Certification and is on file in the office of the

SPECIAL COURT REPORTER

Clerk of this Court at the United States Courthouse in
Washington, D.C. Copies of computer printouts from the
Rolling Stock and Equipment Addendum which are referred
to in the Conveyance Documents relating to a particular
Transferor are also on file with the United States
District Court having jurisdiction over such Transferor.

K.  "Option" shall mean a Conveyance Document
which grants to the Transferee identified therein the
right to acquire designated rail properties from the
Transferor identified therein in accordance with the
terms and conditions set forth in such Document. For
purposes of determining the period within which an Option
may be exercised, the effective date of this Order shall
be deemed to be 12:01 a.m. on April 1, 1976.

L.  "Acknowledgment of Receipt and Acceptance of
Conveyance Document(s)" shall mean the instruments,
copies of which are attached to this Order as Addenda I
and II, that are to be executed by the Transferees and
delivered to the appropriate Transferors in accordance
with the terms of this Order.

M.  "Conveyance Date" shall mean 12:01 a.m. on
April 1, 1976, except that, in the case of property
acquired pursuant to the exercise of an Option,

SPECIAL COURT REPORTER                    - 8 -

"Conveyance Date," for purposes of paragraphs A(1) and
A(2) of Section 4 of this Order, shall mean the date on
which such property is conveyed to the Transferee
pursuant to the exercise of such Option.

Section 2.  Execution and Delivery of Conveyance
           Documents

     The trustee or trustees of each Transferor
identified in each Conveyance Document shall execute
(and, where indicated, shall acknowledge) and on or
before the Conveyance Date shall deliver such Conveyance
Document to the Transferee identified therein -- such
delivery to be effective as of the Conveyance Date.  Any
such Conveyance Document (or any Conveyance Document
delivered pursuant to the exercise of an Option) may be
executed, acknowledged, and delivered on behalf of the
trustee or trustees by any person or persons who has or
have been authorized to perform such acts on behalf of
the trustee or trustees by the United States District
Court or other court having jurisdiction over the
Transferor identified in such Conveyance Document.
Execution, acknowledgment and delivery of any Conveyance
Document in which The Connecting Railway Company is
identified as Transferor shall be made by The Connecting
Railway Company as Debtor in possession of its properties

SPECIAL COURT REPORTER                                    M-000071

("Connecting"). The execution and delivery of any
Conveyance Document by or on behalf of a trustee or
trustees or Connecting pursuant to this Order shall not
constitute a waiver of any right that such trustee or
trustees or Connecting may have to object to or
challenge, in whole or in part, the conveyance of the
property identified in such Conveyance Document or the
terms and conditions of any such conveyance or Conveyance
Document. The conveyance of all properties pursuant to
this Section shall be subject to all applicable terms and
conditions of the Conveyance Documents, the Rail Act and
this Order, and each Transferor and Transferee shall
faithfully and expeditiously comply with and fulfill all
such terms and conditions.

Section 3. Acknowledgment of Receipt and Acceptance
           of Conveyance Document(s)

        Concurrently with delivery from a Transferor of
any Conveyance Document or Documents pursuant to this
Order, the Transferee shall execute and deliver to such
Transferor and forthwith file with the Clerk of this
Court an Acknowledgment of Receipt and Acceptance of
Conveyance Document(s) in the form attached hereto as
Addendum I; except that when a Conveyance Document is
delivered pursuant to the exercise of an Option, the

SPECIAL COURT REPORTER          - 10 -                    M-000072

Acknowledgment of Receipt and Acceptance of Conveyance Document(s) shall be in the form attached hereto as Addendum II and shall specify the time at which such Conveyance Documents were actually delivered.  In any case in which a Transferee receives more than one Conveyance Document from a particular Transferor, the Transferee may deliver and file a single Acknowledgment of Receipt and Acceptance of Conveyance Documents referring to all of the Conveyance Documents received from such Transferor.  The execution of any Conveyance Document or the execution and delivery of any Acknowledgment of Receipt and Acceptance of Conveyance Document(s) by any Transferee pursuant to this Order, or the execution and delivery of any other document pursuant to the terms of such Acknowledgment of Receipt and Acceptance of Conveyance Document(s), shall not constitute a waiver of any right that such Transferee may have to object to or challenge, in whole or in part, the obligations and conditions imposed on such Transferee by the terms of any Conveyance Document or the terms and conditions of the conveyance of the property identified in such Conveyance Document.

SPECIAL COURT REPORTER

- 11 -

Section 4.   Certain Terms and Conditions of Conveyance

Each conveyance of property pursuant to this
Order shall, where applicable, be subject to the
following terms and conditions:

A.   Allocation of Taxes, Assessments, Rents,
License Fees, User Fees and Other Charges

(1)  Allocation Over Time.  As between the
Transferor and Transferee identified in any Conveyance
Document with respect to rail property conveyed to a
Transferee pursuant to this Order, the obligation, if
any, for payment of

(a)  any tax, assessment, license fee,
or other charge imposed by a
governmental authority on or with
respect to any such property or
any use thereof or thereon for any
period of time or term within
which the Conveyance Date falls,
or

(b)  any rent, license fee, user fee
or other charge imposed under or
by virtue of any lease, license,

M-000074

SPECIAL COURT REPORTER                 - 12 -

easement, encumbrance or other
agreement that continues to attach
to such property after the
Conveyance Date,

shall be adjusted on a pro rata basis to the Date of
Conveyance so that

(i)   the Transferor is obligated for
any such payment as is
attributable to that portion of
such period or term preceding the
Conveyance Date, and

(ii)  the Transferee is obligated for
any such payment as is
attributable to the balance of
such period or term.

(2)  Allocation in the Case of Subdivided or
Aggregated Property.  In the case of any rail property
referred to in the preceding subdivision (1) that:

(a)  is part of a parcel of property
or an aggregation of property that
has been or is taxed, assessed or
otherwise charged as a unit for

M-000075

SPECIAL COURT REPORTER          - 13 -

a period of time or term within
which the Conveyance Date falls,
or

(b)   is part of a parcel of property
or an aggregation of property that
is subject to one or more leases,
licenses, easements, encumbrances
or other agreements that continue
to attach to such parcel or
aggregation of property after the
Conveyance Date,

the obligation for payment of any tax, assessment, rent,
license fee, user fee or other charge that is or becomes
payable with respect to such parcel or aggregation of
property for that part of such period of time or term as
follows the Conveyance Date shall be allocated to such
Transferee in the proportion that the value of such
property conveyed to such Transferee bears to the total
value of such parcel or aggregation of property, determined
as of the Conveyance Date; provided that, if any such
tax, assessment, rent, license fee, user fee or other
charge is attributable to the parts constituting such
parcel or aggregation of property on a basis other than the

M-000076

SPECIAL COURT REPORTER

- 14 -

relative values of such parts, such allocation shall be
made on such other basis.  If the parties are unable to
agree on the basis or method for allocating any such tax,
assessment, rent, license fee, user fee or other charge,
either or both of such parties may apply to this Court
for an order determining the basis or method to be used
for such allocation.

### 3.  Pre-Recording Protection of Transferors and Transferees

In the case of real property conveyed, or
reserved and excepted from conveyance, in any Conveyance
Document, on and after the Conveyance Date and until such
Conveyance Document shall have been filed for record with
respect to such property in each local jurisdiction in
which such property is situated, no Transferor or
Transferee identified in such Conveyance Document shall
transfer or convey such property, in whole or in part,
or create any lien or encumbrance on or with respect to
such property, unless the instrument effecting such
transfer or conveyance or creating such lien or
encumbrance provides that such property is subject to any
easement, encumbrance, right or benefit that may have
been created or recognized in or by such Conveyance
Document.

ATTACHMENT D, SHEET 15

M - 000077

SPECIAL COURT REPORTER

- 15 -

### C. Resignations of Representatives of the Trustees

On and after Conveyance Date, the trustee or trustees of each Transferor and Connecting shall, upon the request of a Transferee, use his, their or its best efforts to cause any person who is serving at the request of such Transferor as a director or officer of another corporation, partnership, joint venture, or other enterprise, the stock ownership or other corporate interest in which is conveyed from such Transferor to such Transferee pursuant to this Order, to resign from, or otherwise act in accordance with the lawful directions of the Transferee with respect to, such person's position as such director or officer; provided, however, that nothing herein shall be deemed a restraint upon the ability of any such person otherwise to resign from such position as director or officer.

*M - 000078*

SPECIAL COURT REPORTER          - 16 -

Section 5.  Correction of Errors

    A.  Correction of Errors by or on Application
        of Transferors and Transferees

    To the extent necessary to

            (a)  carry out the intent of a
                Conveyance Document or to perfect
                a designation contained in the
                Final System Plan, or

            (b)  record or otherwise perfect any
                Conveyance Document delivered
                pursuant to this Order under any
                applicable statute, ordinance,
                rule or regulation,

each Transferor or Transferee shall perform, execute,
acknowledge, endorse and deliver any and all such further
acts, deeds, transfers, assignments, certificates and
other instruments as may be reasonably requested by any
Transferor or Transferee in order to convey, reconvey,
confirm, clarify, identify or more precisely describe the
properties designated to be conveyed in the Final System
Plan or the properties conveyed or reserved and excepted
from conveyance in any Conveyance Document (or intended

M-000073

SPECIAL COURT REPORTER          - 17 -

so to be).  If such parties are unable to agree upon or
effectuate such action as should be taken pursuant to
this paragraph or the division of costs incident to such
action, such party or parties may apply to this Court for
such relief as may be appropriate; provided that no
person shall apply to this Court for an order or other
action under this paragraph A without concurrently
serving the Association with notice of such application.

B.   Retention of Jurisdiction

This Court retains jurisdiction under Section
209(e) of the Rail Act.

Section 6.   Certification of Documents to Transferors and
Transferees

Promptly after the entry of this Order, the
Association shall deliver to each Transferor and
Transferee a copy of the Conveyance Documents to which
such Transferor or Transferee is a party together with
each map and rolling stock and equipment inventory
computer printout referred to in such Conveyance
Documents and shall certify that such Conveyance
Documents, maps, and printouts are true copies of the
Conveyance Documents, maps, and printouts certified by

SPECIAL COURT REPORTER                    - 18 -                    M-00008

the Association to this Court and filed in the office of
the Clerk of this Court.

Section 7.  Issuance of Certified Copies

Upon request of any Transferor or Transferee or
any interested person and upon payment of such reasonable
fee as may from time to time be established by the rules
of this Court, the Clerk of this Court shall issue a
certified copy of this Order together with a certified
copy of any Conveyance Document requested by such person
and shall certify that such Conveyance Document was
certified to this Court by the Association and is
identified in the files of this Court by the Document
Number appearing on such certified copy of such
Conveyance Document.

Section 8.  Compilation and Deposit of Sets of Conveyance
            Documents

The Association shall cause to be compiled
complete sets of the Conveyance Documents (and the maps
referred to in such Conveyance Documents) in the sequence
listed in the Conveyance Document Schedules and in the
form prepared for execution and delivery of such
Conveyance Documents, and shall deposit two complete sets
thereof with the Clerk of this Court on or before 12:00

ATTACHMENT O, SHEET 19

M-000081

SPECIAL COURT REPORTER          - 19 -

noon on March 29, 1976, and shall attest that each such

set contains true copies of all such Conveyance Documents

certified to this Court by the Association.

_Henry J./ Friendly_
Presiding Judge

_John Minor Wisdom_
John Minor Wisdom
Judge

_Roszel C. Thomsen_
Roszel C. Thomsen
Judge

Date:  March 15, 1976

# EXHIBIT C

03/24/97  MON 16:47 FAX 202 273 0479      ADMIN SERVICE                                    002
     MAR-24-1997  11:56        JUDGE WEINER                                              P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION   :
                                        :
                                        :       Special Court
           V.                    :       Regional Rail Act
                                        :       C.A. NO. 97-RR-01[1]
                                        :

COMMONWEALTH OF PENNSYLVANIA    :
DEPARTMENT OF GENERAL SERVICES  :
and THE FRANK BRISCOE CO., INC. :

WEINER, J.[2]

**MEMORANDUM OPINION AND ORDER**

**FILED**

March 24, 1997 MAR 24 1997

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

      Consolidated Rail Corporation (Conrail) brought this
action for declaratory relief against the Commonwealth of Pennsyl-
vania Department of General Services (DGS) and The Frank Briscoe
Company, Inc. (Briscoe), seeking a partial stay of proceedings in
the Court of Common Pleas of Dauphin County.  Conrail seeks a
declaration that the subject matter of the underlying suit is
partly within the exclusive jurisdiction of this court[3], and that

------

[1] The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

[2] United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

[3] "This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

03/24/97  MON 16 47 FAX 202 273 0479       ADMIN SERVICE                    ☎003
       MAR-21-1997  11:57        JUDGE WEINER                                P.02/09

it has no liability as a successor or assignee of the Penn Central
Corporation.  Also before the court is a motion by the defendants
to dismiss.  This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[1]  For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. § 719(e)(2).  This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1975, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed.  At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion.  The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center.  Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

---

[1]The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

2

03/24/97  MON 16:46 FAX 202 273 0479        ADMIN/SERVICE                              ☒004

MAR-24-1997  11:57        JUDGE WEINER                                        P.03/09

conveyance in effect transferred Penn Central's remaining rights of
way, transportation easements and other easements. Both the deed
and the accompanying bill of sale contained language limiting
Conrail's liability for obligations accruing prior to the date of
delivery of the deed.[5]

The Convention Center was completed in August 1981,
nearly two years behind schedule. Briscoe, who served as general
contractor on the project, along with DGS have commenced two civil
actions seeking to recover damages allegedly attributable to the
delay in construction. They brought a joint action in Dauphin
County in June 1986 naming thirteen defendants. Conrail was not
joined. Rather, Conrail became a party some two years later when
it was named in a third party complaint filed by the Peter F.

_____

[5]The deed provided:
        . . . the Grantee (Conrail) assumes no obliga-
        tion or liability that arises after the date
        of delivery of this Deed out of any event, act
        or failure to act that occurred prior thereto
        and, where an obligation or liability is
        related to a period which is both before and
        after such date, the Grantee assumes only that
        portion of the obligation or liability which
        is reasonably allocable to the part of the
        period after such sale.
Schedule E to the Bill of Sale provided:
        Grantee assumes the foregoing contracts and
        obligation to perform and observe all cove-
        nants and conditions therein contained on the
        part of Grantor (Penn Central) to be performed
        and observed after the date of delivery hereof
        . . . Grantee assumes no liabilities or
        obligations of any kind which have accrued
        prior to the date of delivery hereof or which
        thereafter arise out of any event, act or
        failure to act which occurred prior thereto in
        connection with the foregoing contracts or any
        property which is the subject thereof.

3

03/24/97 MON 16:48 FAX 202 273 0479    ADMIN/SERVICE    ☐005
MAR-24-1997  11:58      JUDGE WEINER                      P. 04/23

Loftus Division of Eichleay Engineering (Loftus). DGS filed a
second action in 1989 in which it named eight defendants; again
Conrail was not one of them. It was again joined by Loftus. In
1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed
presence of an underground electrical ductbank, which was struck by
construction workers driving piles for the new Convention Center.
The ductbank was struck after Penn Central had conveyed the land to
DGS, and after its remaining interests were conveyed to Conrail.
The claims against Conrail seek to hold it liable both as a
successor to Penn Central, as well as for independent, post-
conveyance acts of its agents who were on site during the construc-
tion. Successor liability is premised upon Penn Central's pre-
conveyance statements to DGS that all utilities had been abandoned,
Penn Central's failure to de-energize and relocate the power line,
and its failure to include the power line on construction drawings.
Direct liability is premised upon Conrail's unreasonable delay in
moving the power line after its accidental discovery, as well as
the fact that its on site agent failed to warn of the existence of
the power line.

Reduced to its essence, Conrail argues that since the
successor liability issues presented in the Dauphin County action
are within the exclusive jurisdiction of this court, the Dauphin
County action must be stayed. Pursuant to Section 209(g) of the
Rail Act, this court may stay or enjoin any action or proceeding in
any state or federal court, other than the United States Supreme

4

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.    45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).   Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

     Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

     It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

court's conveyance order, or the conveyance documents, and is
within our jurisdiction. While both sides point to our decisions
in Penn Central v. United States, supra and Consolidated Rail Corp.
v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as
support for their jurisdictional arguments, we find this action is
far more simple than the situations presented there. In both Penn
Central and Consolidated Rail, we were faced with the interplay of
the Rail Act and a second statutory scheme, the Comprehensive
Environmental Response, Compensation and Liability Act, as amended
by the Superfund Amendments and Reauthorization Act, 42 U.S.C.
§9601, et seq. Finding that, in enacting CERCLA, Congress intended
its liability provisions to apply notwithstanding any other
provision of law, we concluded that CERCLA was an exception to the
fresh start policy embodied in the Rail Act. While we refused to
completely exonerate Conrail from post-conveyance CERCLA liability,
we reconciled the two statutory schemes by making clear that
pursuant to the Rail Act, liability for pre-conveyance environmen-
tal contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme
at issue. As we read the underlying pleadings, liability is
premised upon common law contract and tort theories, seeking, inter
alia, to hold Conrail responsible as corporate successor for Penn
Central's acts and omissions. The fresh start policy embodied in
the Rail Act, and incorporated into the conveyancing documents,
creates a bright line date upon which the liability of Penn Central
ended and the liability of Conrail began. Congress mandated that

there be no successor liability hindering the future financial well being of the newly created Conrail. Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished. However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it. As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

03/24/97  MON 16:49 FAX 202 273 0479      ADMIN/SERVICE                        ☐009

MAR-24-1997  12:00      JUDGE WEINER                                        P.08/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION    :
                                 :
                                 :
                                 :
            v.                   :        Special Court
                                 :        Regional Rail Act
                                 :        C.A. NO. 97-RR-01
                                 :
                                 :
COMMONWEALTH OF PENNSYLVANIA     :
DEPARTMENT OF GENERAL SERVICES   :             **FILED**
and THE FRANK BRISCOE CO., INC.  :
                                            MAR 24 1997

                    JUDGMENT ORDER          NANCY MAYER-WHITTINGTON, CLERK
                                                U.S. DISTRICT COURT

        The  motion  to  dismiss  defendants  Commonwealth  of

Pennsylvania Department of General Services and The Frank Briscoe

Co., Inc. is DENIED.

        The motion of plaintiff Consolidated Rail Corporation to

stay is GRANTED.

        Judgment on the merits is ENTERED in favor of plaintiff

Consolidated Rail Corporation and against defendants Commonwealth

of Pennsylvania Department of General Services and The Frank

Briscoe Co., Inc.

        The court DECLARES that pursuant to the conveyance orders

issued by this court and the conveyance documents executed

thereunder, there is no successor liability of Consolidated Rail

Corporation for the acts and omissions of the Penn Central

Transportation Company for the period prior to April 1, 1976 as

asserted in the pleadings filed in the consolidated actions

8

03/24/97 MON 16:49 FAX 202 273 0479    ADMIN SERVICE    ☒010
MAR-24-1997  12:01    JUDGE WEINER    P.03/09

captioned Commonwealth of Pennsylvania, Department of General Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associates, P.C., et al., Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

_____
CHARLES R. WEINER

9

TOTAL P.03

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

CONSOLIDATED RAIL CORPORATION
2001 Market Street
Philadelphia, PA 19103

SUMMONS IN A CIVIL CASE

V.

GERARD A. RITTER AND SUSAN K. NOREK, Executors
for the Estate of GERARD H. RITTER, deceased
908 South Webster Avenue
Scranton, PA 18505

CASE ?

Case  1:07-cv-01370
Assigned To : Urbina, Ricardo M
Assign Date : 7/27/2007
Description : General Civil

TO: (Name and address of Defendant)

Gerard A. Ritter ███████████████████
Estate of Gerard H. Ritter, deceased
908 South Webster Avenue
Scranton, PA 18505

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Charles Carpenter
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, D.C. 20005-2004

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY MAYER-WHITTINGTON                    JUL 2 3 2007

CLERK                                       DATE

(BY) DEPUTY CLERK

AO 440  (Rev. DC - September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me [*] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant. Place where served: _____

_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

_____

_____

☐  Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                         Date                              *Signature of Server*


                                        _____
                                        *Address of Server*

(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSOLIDATED RAIL CORPORATION | : |
| | : |
| Plaintiff, | Case 1:07-cv-01370 |
| | Assigned To : Urbina, Ricardo M. |
| v. | Assign Date : 7/27/2007 |
| | Description: General Civil |
| GERARD A. RITTER AND SUSAN R. NOREK, | : |
| for the Estate of GERARD H. RITTER, deceased | : |
| | : |
| Defendants | : |
| | : |
| | : |

MOTION OF CONSOLIDATED RAIL CORPORATION
FOR A PARTIAL STAY OF PROCEEDINGS PENDING IN THE COURT OF
COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

Plaintiff, Consolidated Rail Corporation ("Conrail") by its attorneys, Pepper

Hamilton LLP, pursuant to Section 209(g) of the Regional Rail Reorganization Act of 1973, 45

U.S.C. § 719(g), moves for a stay of Philadelphia County, Pennsylvania Court of Common Pleas

proceedings in *Ritter v. Garlock, Inc., et al.*, No. 050600467, solely to the extent the court may

seek to impose liability on Conrail for actions of Erie Lackawanna prior to April 1, 1976, the

date on which Conrail began operations pursuant to the Rail Act, 45 U.S.C. § 701, *et seq.* In

support of this Motion, Conrail respectfully refers this Court to the supporting brief filed

herewith.

---

Exhibit "B"

WHEREFORE, Conrail respectfully requests that this Court grant this Motion and enter an order partially staying the Pennsylvania proceedings.

Respectfully submitted,

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles H. Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665

Attorneys for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CONSOLIDATED RAIL CORPORATION | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 07- |
| | : | |
| GERARD A. RITTER AND SUSAN R. NOREK, | : | |
| for the Estate of GERARD H. RITTER, deceased | : | |
| | : | |
| Defendants | : | |
| | : | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CONSOLIDATED RAIL
CORPORATION FOR A PARTIAL STAY OF PROCEEDINGS PENDING IN THE
COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

I.      INTRODUCTION

        Plaintiff Consolidated Rail Corporation ("Conrail") seeks a partial stay of

proceedings pending in the Philadelphia County, Pennsylvania Court of Common Pleas in *Ritter*

*v. Garlock, Inc., et al.*, No. 050600467 (hereinafter the "Pennsylvania Action"), asbestos

personal injury action. The Plaintiffs in the Pennsylvania Action have filed a complaint against

Conrail seeking to impose liability on Conrail as an alleged corporate successor of Erie

Lackawanna Railway Company ("Erie Lackawanna") for acts of Erie Lackawanna undertaken

prior to the April 1, 1976 transfer of rail assets to Conrail from Erie Lackawanna Railway

Company. That asset transfer was made pursuant to Section 303(b)(2), 45 U.S.C. § 743(b)(2), of

the Regional Rail Reorganization Act of 1973 ("Rail Act", 45 U.S.C. § 701, *et seq.*) pursuant to conveyance orders issued by the Special Court. The central issue raised in the Pennsylvania complaint thus requires an interpretation of this Court's conveyance orders implementing the Rail Act, Section 303(b)(2). Such an interpretation falls under the original and exclusive jurisdiction of the United States District Court for the District of Columbia pursuant to Section 209(e) of the Rail Act, exercising the powers of the Special Court. Accordingly, consistent with past practice, the Court should exercise the authority granted to it by Section 209(g) of the Rail Act and grant Conrail's motion for a partial stay of the Philadelphia County proceedings solely to the extent the state court may seek to impose on Conrail liability for actions of Erie Lackawanna occurring prior to the April 1, 1976 conveyance of certain of Erie Lackawanna's rail assets to Conrail.

## II.    STATEMENT OF FACTS

On June 8, 2005, Gerald H. Ritter (hereinafter "decedent"), and his wife Alice Ritter, filed a Complaint in the Philadelphia County, Pennsylvania Court of Common Pleas against numerous defendants including Conrail, alleging that during the course of the decedent's employment, decedent was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*. The Decedent passed away on July 20, 2006. In April, 2007, Gerard A. Ritter and Susan Norek (hereinafter "Executors") were substituted as Plaintiffs in the Pennsylvania Action as co-Executors of Decedent's estate.

The Decedent was employed by Delaware Lackawanna and Western Railroad from March of 1941 to August of 1942, and again from December of 1945 to 1960. He was then employed by Erie Lackawanna Railroad from 1960 to 1967, and again from 1971 to 1976. The Decedent was employed by Conrail from April 1976 until 1981 as an an brake inspector. The Decedent was diagnosed on or about March 8, 2005, as having mesothelioma as a result of his

exposure to asbestos. Plaintiffs have offered no evidence showing that the Decedent was exposed to asbestos during his employment with Conrail. Thus the Executors' sole claim against Conrail is based on the erroneous notion that Conrail is the successor-in-interest to Delaware Lackawanna and Western Railroad and Erie Lackawanna Railroad and is therefore liable for injuries suffered during decedent's employment with those predecessors.

Pursuant to Sections 301 and 303(b)(2) of the Rail Act, on April 1, 1976, assets belonging to various bankrupt railroads were conveyed to the newly formed Consolidated Rail Corporation. 45 U.S.C. §§ 741, 743(b)(2). Section 303(b)(2) of the Rail Act, reflecting Congressional intent to prevent successor liability from hindering Conrail future's financial well-being, provided that the assets of bankrupt railroads were to be transferred to Conrail "free and clear of any liens and encumbrances, except certain types of leases." 45 U.S.C. §§ 743(b)(2). Erie Lackawanna filed for bankruptcy in June of 1972, ceased all rail operations on April 1, 1976 and conveyed the bulk of its rail properties to Conrail at that time. *See In re Erie Lackawanna Railway Co.*, 803 F.2d 881, 882 (3d Cir. 1986). Erie Lackawanna remained in reorganization until November 30, 1982, when it was discharged from bankruptcy as Erie Lackawanna, Inc. only so that it might "liquidate its remaining assets as expeditiously as possible." *Id.*

For the reasons set forth below, the Philadelphia County, Pennsylvania, proceedings must be stayed insofar as that court may seek to impose liability on Conrail for asbestos exposure alleged to have occurred during the decedent's employ with Erie Lackawanna.

III.    ARGUMENT

Under Rail Act Section 209(b), Congress created a Special Court generally to interpret its conveyance orders and to determine delineated claims under the provisions of the Rail Act. 45 U.S.C. § 719(b)(1). Congress subsequently abolished the Special Court and,

3.

effective January 17, 1997, transferred all jurisdiction and other functions of the Special Court to the United States District Court for the District of Columbia. 45 U.S.C. § 719(b)(2).

This Court has the "original and exclusive jurisdiction" over "any action, whether filed by an interested person or initiated by the special court itself, to *interpret*, alter, amend, modify or implement any of the orders entered by such court pursuant to [Section 303(b)]." 45 U.S.C. §§ 719(e)(2) (emphasis added). As noted above, Section 303(b)(2) of the Rail Act provides for the transfer of bankrupt railroad assets to Conrail "free and clear of any liens and encumbrances." 45 U.S.C. §§ 743(b)(2). As also noted above, Erie Lackawanna's assets were transferred to Conrail in 1976 pursuant to the Special Court's Section 303(b)(2) Order. In addition, pursuant to Section 209(g) of the Rail Act, the Court may "stay or enjoin any action or proceeding in any state court . . . if such action or proceeding is contrary to any provision of [the Rail Act], impairs the effective implementation of [the Rail Act], or interferes with the execution of any order of the special court pursuant to [the Rail Act]." 45 U.S.C. § 719(g).

The Executors' sole claim against Conrail in the Pennsylvania Action is based on the notion that Conrail is a successor-in-interest to Erie Lackawanna and thereby liable for decedent's injuries. Conrail vigorously disputes the Executors' position, but for the purposes of this motion it is relevant only that the Executors' argument necessarily turns on an interpretation of the Special Court's Section 303(b)(2) Order, bringing the Executors' claim within the original and exclusive jurisdiction of this Court.[1]

---

[1] The decision of the Special Court in *Consolidated Rail Corp. v. Reading Co.*, 645 F. Supp. 1318, 1324-25 (S.C.R.R.R.A. 1987), is distinguishable. In *Reading*, Conrail sought a broad declaratory order seeking an interpretation of 45 U.S.C. §797(b) and to preempt "any attempt to pin [successorship] liability on Conrail under any theory of tort law." *Reading*, at 1323. The Special Court refused, holding such relief did not "fit squarely within our . . . jurisdiction." *Reading*, at 1323. Here, unlike *Reading*, the decedent's claim against Conrail is fully ripe and turns on this Court's Section 303(b)(2) conveyance order. Moreover, one of the issues presented here, whether the claim arose prior to the April 1, 1976 conveyance date, was not before the Court in *Reading*.

The Court should exercise its discretion and grant Conrail's motion for a partial stay of proceedings pending in Philadelphia County, Pennsylvania for the following reasons. First, Rail Act Section 209(e) grants "exclusive" jurisdiction to the Court to determine the scope and meaning of the Special Court's conveyance orders; thus this is the only Court that may hear this matter. 45 U.S.C. § 719(e) and § 719(g). Second, this Court has previously stayed actions against Conrail based upon questions of successor liability in order to exercise its original and exclusive jurisdiction over such matters under the Rail Act. *See Consolidated Rail Corp. v. Commonwealth of Pa. Dep't of Gen. Servs.*, No. 97-RR-01, slip op. at 2 (S.C.R.R.R.A. Mar. 24, 1997), attached hereto as Exhibit A.

## IV.    CONCLUSION

For the above-stated reasons, Conrail respectfully requests that this Court grant this Motion and enter an order staying the Philadelphia County proceedings.

Respectfully submitted,

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles H. Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
carpenterc@pepperlaw.com

Attorneys for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    CIVIL ACTION NO  07- |
| | : |
| **GERARD A. RITTER AND SUSAN R. NOREK,** | : |
| **for the Estate of GERARD H. RITTER, deceased** | : |
| | : |
| Defendants | : |

## ORDER

AND NOW, this _____ day of _____, 2007, upon

consideration of the aforementioned Plaintiff's Brief in Support of Plaintiff's Motion for

a Partial Stay of Proceedings Pending in the Court of Common Pleas of Philadelphia

County, Pennsylvania, it is hereby ORDERED that Plaintiff's Motion for a Partial Stay of

Proceedings is GRANTED.

By the Court:

_____
J.

# EXHIBIT A

03/24/97  MON 16:47 FAX 202 273 0478        ADMIN/SERVICE                           @002
        MAR-24-1997  11:56          JUDGE WEINER                                    P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION  :
                               :
                               :
                               :        Special Court
            V.                 :        Regional Rail Act
                               :        C.A. NO. 97-RR-01[1]
                               :
                               :
COMMONWEALTH OF PENNSYLVANIA    :
DEPARTMENT OF GENERAL SERVICES  :
and THE FRANK BRISCOE CO., INC. :        **FILED**

WEINER, J.[2]                          March 24, 1997 MAR 2 4 1997

                                       NANCY MAYER-WHITTINGTON CLERK
        **MEMORANDUM OPINION AND ORDER**      U.S. DISTRICT COURT

        Consolidated Rail Corporation (Conrail) brought this

action for declaratory relief against the Commonwealth of Pennsyl-

vania Department of General Services (DGS) and The Frank Briscoe

Company, Inc. (Briscoe), seeking a partial stay of proceedings in

the Court of Common Pleas of Dauphin County.  Conrail seeks a

declaration that the subject matter of the underlying suit is

partly within the exclusive jurisdiction of this court[3], and that

_____

    [1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

    [2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

    [3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

                                                                          1

03/24/97  MON 16 47 FAX 202 273 0479      ADMIN SERVICE                    ℗003
      MAR-27-1997  11:57        JUDGE WEINER                        P.02/03

it has no liability as a successor or assignee of the Penn Central
Corporation.  Also before the court is a motion by the defendants
to dismiss.  This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[4]  For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

       Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. § 719(e)(2).  This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1975, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed.  At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion.  The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center.  Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

---

       [4]The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

2

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
> . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.

Schedule E to the Bill of Sale provided:
> Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

Loftus Division of Eichleay Engineering (Loftus).  DGS filed a
second action in 1989 in which it named eight defendants; again
Conrail was not one of them.  It was again joined by Loftus.  In
1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed
presence of an underground electrical ductbank, which was struck by
construction workers driving piles for the new Convention Center.
The ductbank was struck after Penn Central had conveyed the land to
DGS, and after its remaining interests were conveyed to Conrail.
The claims against Conrail seek to hold it liable both as a
successor to Penn Central, as well as for independent, post-
conveyance acts of its agents who were on site during the construc-
tion.  Successor liability is premised upon Penn Central's pre-
conveyance statements to DGS that all utilities had been abandoned,
Penn Central's failure to de-energize and relocate the power line,
and its failure to include the power line on construction drawings.
Direct liability is premised upon Conrail's unreasonable delay in
moving the power line after its accidental discovery, as well as
the fact that its on site agent failed to warn of the existence of
the power line.

Reduced to its essence, Conrail argues that since the
successor liability issues presented in the Dauphin County action
are within the exclusive jurisdiction of this court, the Dauphin
County action must be stayed.  Pursuant to Section 209(g) of the
Rail Act, this court may stay or enjoin any action or proceeding in
any state or federal court, other than the United States Supreme

4

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.  45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).  Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

court's conveyance order, or the conveyance documents; and is
within our jurisdiction.  While both sides point to our decisions
in Penn Central v. United States, supra and Consolidated Rail Corp.
v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as
support for their jurisdictional arguments, we find this action is
far more simple than the situations presented there.  In both Penn
Central and Consolidated Rail, we were faced with the interplay of
the Rail Act and a second statutory scheme, the Comprehensive
Environmental Response, Compensation and Liability Act, as amended
by the Superfund Amendments and Reauthorization Act, 42 U.S.C.
§9601, et seq.  Finding that, in enacting CERCLA, Congress intended
its liability provisions to apply notwithstanding any other
provision of law, we concluded that CERCLA was an exception to the
fresh start policy embodied in the Rail Act.  While we refused to
completely exonerate Conrail from post-conveyance CERCLA liability,
we reconciled the two statutory schemes by making clear that
pursuant to the Rail Act, liability for pre-conveyance environmen-
tal contamination belonged to Penn Central and not Conrail.

      Here, there is no other counterbalancing statutory scheme
at issue.  As we read the underlying pleadings, liability is
premised upon common law contract and tort theories, seeking, inter
alia, to hold Conrail responsible as corporate successor for Penn
Central's acts and omissions.  The fresh start policy embodied in
the Rail Act, and incorporated into the conveyancing documents,
creates a bright line date upon which the liability of Penn Central
ended and the liability of Conrail began.  Congress mandated that

01/24/97  MON 16:49 FAX 202 273 0479    ADMIN/SERVICE                    ⊄005

MAR-24-1997  13:35        JUDGE WEINER                              P.03/03

there be no successor liability hindering the future financial well being of the newly created Conrail. Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished. However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it. As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION   :
    :
    :
    :
    :     Special Court
      v.          :     Regional Rail Act
    :.    C.A. NO. 97-RR-01
    :
    :
COMMONWEALTH OF PENNSYLVANIA   :
DEPARTMENT OF GENERAL SERVICES :
and THE FRANK BRISCOE CO., INC. :

**FILED**

MAR 24 1997

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JUDGMENT ORDER

The motion to dismiss defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc. is DENIED.

The motion of plaintiff Consolidated Rail Corporation to stay is GRANTED.

Judgment on the merits is ENTERED in favor of plaintiff Consolidated Rail Corporation and against defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc.

The court DECLARES that pursuant to the conveyance orders issued by this court and the conveyance documents executed thereunder, there is no successor liability of Consolidated Rail Corporation for the acts and omissions of the Penn Central Transportation Company for the period prior to April 1, 1976 as asserted in the pleadings filed in the consolidated actions

8

03/24/97  MON 16:49 FAX 202 273 0479        ADMIN/SERVICE                              @010

MAR-24-1997  12:01          JUDGE WEINER                                    P.09/09

captioned <u>Commonwealth of Pennsylvania, Department of General</u> <u>Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associ-</u> <u>ates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

_____
CHARLES R. WEINER

TOTAL P.09

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE W. LEWIS,                     )
                                     )
        Plaintiff,                   )
                                     )
            v.                       )    Civil Action No. 91-201 Erie
                                     )
CONSOLIDATED RAIL CORPOR-            )
ATION, Successor-in-interest         )
to The Erie Lackawanna               )
Railroad Co., successor-in-          )
interest to the Erie Railroad        )
Co.,                                 )
                                     )
        Defendant.                   )
                                     )
PAUL MUSHRUSH,                       )
                                     )
        Plaintiff,                   )
                                     )
            v.                       )    Civil Action No. 91-202 Erie
CONSOLIDATED RAIL CORPOR-            )
ATION, in its own right and          )
as successor-in-interest to          )
The Erie Lackawanna Railroad         )
Co., successor-in-interest           )
to the Erie Railroad Co.,            )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION

These consolidated cases were filed with the court in August, 1991. The plaintiffs are former railroad workers who are claiming occupational related hearing losses and are asking for relief pursuant to the Federal Employer's Liability Act, 45 U.S.C. § 51, et seq. Presently before the court is a motion for partial summary judgment filed by defendant Consolidated Rail Corporation, hereinafter ("Conrail"), asking the court to find that Conrail shall not be liable for any acts or omissions which took place before April 1, 1976. The gravamen of Conrail's motion

Exhibit "C"

72A
rv 8/82)

for partial summary judgment is the assertion that it is not the successor-in-interest to the Erie Lackawanna Railroad.

Conrail contends that it acquired the assets of Erie Lackawanna but did not undertake to assume any liability for claims against Erie Lackawanna. It also asserts that the Rail Act under which Conrail was created shields Conrail from successorship liability for claims against companies whose assets it acquired under the Regional Rail Reorganization Act ("Rail Act") (as amended 45 U.S.C. § 701 et seq.) When discussing the consequences of the reorganization of northeast railroads, we must keep in mind that we are dealing with a "hybrid" proceeding in which we must consider the interaction of Section 77 of the Bankruptcy Act with the Rail Act. In re Erie Lackawanna Railway Co., 803 F.2d 881, 882 (3d Cir. 1986).

The issue before this court, namely Conrail's successorship liability, was discussed in a case relied upon by Conrail in its motion, namely that of Zulkowski v. Consolidated Rail Corp., 852 F.2d 73 (3d Cir. 1988). However the appellate court was quick to point out that the precise matter before the district court was not Conrail's responsibility for the plaintiff's claims. Thus the part of the opinion dealing with the responsibility of Conrail may be termed dicta, although Conrail deems it to be instructive to the court in the present matter. The Zulkowski court opined:

> Nowhere in these citations, or elsewhere in the Rail Act, is there any provision transferring the liability for a claim of the type made here from an entity reorganized under the Act to Conrail or otherwise relieving an entity so reorganized from such a

2

liability.
Id. at 77.

Conrail next points to 45 U.S.C. § 743(b)(2) of the Railroad Act which states that "All rail properties conveyed to the Corporation or any subsidiary thereof...shall be conveyed free and clear of any liens or encumbrances, but subject to such leases and agreements as shall have previously burdened such properties."

These difficult issues were dealt with in depth in the case of In the Matter of Penn Central Transportation Company, (hereinafter "Penn Central"), 944 F.2d 164 (3d Cir. 1991). The same cases used by the litigants in this case were analyzed by the Circuit Court in that case. In the case of Schweitzer v. Consolidated Rail Corp., 758 F.2d 936 (3d Cir. 1985), the court carved out an exception to the general proposition that in the context of bankruptcy the need for finality and certainty is especially acute. In Schweitzer, like the present case, railroad employees brought personal injury claims against the reorganized railroad under FELA subsequent to the consummation dates of the debtor company. The employees alleged that because their asbestos-related injuries did not become manifest until after the consummation dates, their claims had not been discharged in the bankruptcy proceedings.

In addressing the issue, the court first sought to determine whether the employees had "claims" against their employer under the FELA prior to the consummation dates. The court reasoned that for the employees to have had tort causes of action prior to the

3

consummation dates, they would have had to have suffered identifiable, compensable injuries prior to the relevant consummation dates. Schweitzer at 942. Under the circumstances presented, the court concluded that the subclinical injury resulting from exposure to asbestos was insufficient to constitute the requisite loss or damage to sustain a tort cause of action. Therefore, the employees did not have "claims" under the FELA before the consummation dates. Id.

Consequently, because no compensable tort arose under the FELA until the manifestation of an injury, the employees and the employer railroad had "no legal relationship relevant to the plaintiffs' future causes of action in tort from which an 'interest' could flow. Id. Moreover, it would be "absurd," the court concluded, to expect the plaintiffs, who had not manifested an injury at the time of the reorganization, to file claims in the reorganization proceedings. Therefore, the court held that the plaintiffs' FELA causes of action were not dischargeable claims under section 77. Id.

Nonetheless, Schweitzer does not answer the question of which party, the original debtor, or its successor, should bear the loss if liability is ultimately imposed. In the Matter of Penn Central, supra at 168. Although the court decided in Schweitzer that the railroad employees' FELA claims were not discharged in the bankruptcy proceedings, it was not until Zulkowski that our Circuit decided which entity would be liable if the claims proved to be meritorious. In Zulkowski, the court

4

held that such liability would remain with the reorganized company. Id.

There remain difficult issues regarding when the hearing losses manifested themselves in the present case. These issues remain to be decided at the time of trial. In the meantime, the court is of the opinion that this case is operating under what the Penn Central court termed "the unique facts surrounding the Erie Lackawanna bankruptcy proceedings." Describing the bankruptcy proceeding as a "liquidating plan of reorganization," the court quoted from the plan of reorganization: "the general program of activities to be carried on by the Reorganized Company will be to liquidate its assets as quickly as practicable." Therefore, based upon these facts, the court determined that the proceedings more closely resembled a liquidation and held that the claims were discharged. Matter of Penn Central at 169. Under such reasoning, Conrail should not be held liable for any acts, commissions, omissions, injuries or damages occurring before April 1, 1976. Rather the plaintiffs will be limited to demonstrating the degree of their hearing loss after that date up to the point in time of their retirement. As a result, defendant Conrail's motion for partial summary judgment will be granted.

An appropriate order will follow.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE W. LEWIS,                       )
                                       )
          Plaintiff,                   )
                                       )
               v.                      )    Civil Action No. 91-201 Erie
                                       )
CONSOLIDATED RAIL CORPOR-              )
ATION, Successor-in-interest           )
to The Erie Lackawanna                 )
Railroad Co., successor-in-            )
interest to the Erie Railroad)
Co.,                                   )
                                       )
          Defendant.                   )
                                       )
PAUL MUSHRUSH,                         )
                                       )
          Plaintiff,                   )
                                       )
               v.                      )    Civil Action No. 91-202 Erie
CONSOLIDATED RAIL CORPOR-              )
ATION, in its own right and            )
as successor-in-interest to            )
The Erie Lackawanna Railroad           )
Co., successor-in-interest             )
to the Erie Railroad Co.,              )
                                       )
          Defendant.                   )

ORDER OF COURT

AND NOW, this __4th__ day of August, 1992,

IT IS HEREBY ORDERED that motion for partial summary

judgment filed by the defendant, Cosolidated Rail Corporation,

Successor-in-interest to the Erie Lackawanna Railroad Co.,

successor-in-interest to the Erie Railroad Co., asking the Court

to absolved it from liability for any acts, commissions,

ommisions, injuries and or damages occurring before April 1,

1976, is GRANTED as against plaintiffs George W. Lewis and Paul

Mushrush.

Glenn E. Mercer
_____
United States District Judge

cm: All parties of record

2A
(8/82)