**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : | |
| | : | |
| Plaintiff, | : | Case 1:07-cv-01370 - RMU |
| | : | |
| v. | : | |
| | : | |
| **GERARD A. RITTER AND SUSAN R. NOREK,** | : | |
| **Executors for the Estate of GERARD H.** | : | |
| **RITTER, deceased** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF
CONSOLIDATED RAIL CORPORATION FOR A PARTIAL STAY OF PROCEEDINGS
<u>PENDING IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY,
PENNSYLVANIA</u>**

I.      INTRODUCTION

        This motion and the underlying declaratory judgment action are an ill-conceived effort by

Conrail to avoid an upcoming trial in an asbestos-related wrongful death case that has been

pending for more than two years.  Conrail's motion faces an insurmountable legal obstacle:  in

*Consolidated Rail Corporation, et al., v. Reading Company, et al.*, 654 F. Supp. 1318, 1324-

1325 (D.D.C. 1987) (Sp. Ct. R.R.R.A., 1987), this Court *considered and rejected* an attempt by

Conrail to seek the same relief that it seeks with this motion.

        Conrail's effort to avoid trial is also tainted by its tardiness.  The underlying wrongful

death case has been pending for more than two years and is scheduled to go to trial in less than

two months.   Conrail's choice to litigate this case actively in state court for more than two years

confirms that the Philadelphia state court is the proper court for deciding Conrail's liability.

The underlying claim, filed in the Philadelphia Court of Common Pleas, involves the death of Gerard H. Ritter, who died after being negligently exposed to asbestos during his employment. Conrail is one of the named defendants in the underlying action and Mr. Ritter's family has alleged that Conrail is not only responsible due to successor liability[1], but also directly liable. *See* Plaintiffs' Short Form Complaint, attached hereto as Exhibit A.   On the eve of trial, Conrail has filed this Motion for Partial Stay of Proceedings in the Philadelphia Court of Common Pleas. As set forth below, however, there is no basis for such request. Defendants therefore respectfully request that Conrail's motion be denied.

II.    THIS COURT LACKS ORIGINAL AND EXCLUSIVE JURISDICTION UNDER THE RAIL ACT

Conrail claims that this Court has original and exclusive jurisdiction over the underlying action pursuant to § 209(e) of the Rail Act and 45 U.S.C. § 719(e), (g). Conrail is wrong.

This Court has specifically held that the Rail Act does not grant this Court with jurisdiction to determine successor liability in a FELA case involving asbestos.  See *Consolidated Rail Corporation, et al., v. Reading Company, et al.*, 654 F. Supp. 1318, 1324-1325 (D.D.C. 1987) (Sp.Ct.R.R.R.A., 1987).  In *Reading Company*, this Court considered Conrail's argument that the federal rail legislation barred recovery by railroad employees or their representatives for asbestos-related injuries. This Court rejected that argument and declined to exercise jurisdiction. In the opinion, dated January 27, 1987, this Court explained,

§ 209(e)(1) does not confer jurisdiction over every suit requiring

---

[1] It is alleged that Conrail is successor-in-interest to Erie Lackawanna railroad.   Mr. Ritter was employed by Erie-Lackawanna from 1960 - 1967 and 1971 - 1976.  He was then employed by Conrail from 1976 - 1981.  He was diagnosed with mesothelioma on March 8, 2005 and died on July 20, 2006.

> an interpretation of the Rail Act.  There must be a challenge to an
> action or inaction of the USRA or to a provision of the Rail Act
> itself.  *Prairie Central Ry. v. Illinois Central Gulf RR.*, 564 F.Supp
> 385 (Sp.Ct.R.R.R.A. 1983).  The other provisions of § 209(e) are
> inapplicable to these cases.  Conrail and Amtrak are not
> challenging the Rail Act but seeking a declaration that the overall
> purpose of the Act, to establish an economically viable freight
> railroad in the region, is jeopardized by the possibility of imposing
> common law successor liability on Conrail.  This may be so, but it
> is not within our exclusive jurisdiction to determine.

*Consolidated Rail Corporation, et al., v. Reading Company, et al.*, 654 F.Supp. at 1324-1325

[footnote omitted].

Conrail discusses the *Reading* opinion in a footnote, claiming that it is distinguishable

from this case because it sought a "broad declaratory order seeking an interpretation of 45 U.S.C.

§ 797(b) [sic] and to preempt "any attempt to pin [successorship] liability on Conrail under any

theory of tort law."  *Reading*, at 1323.  (Conrail's motion, at p.4.)   This is simply not accurate.

Conrail sought a determination that federal rail legislation barred recovery in a FELA

case and specifically requested that this Court determine whether successor liability was

preempted.  The case involved claims for injury and/or death due to asbestos exposure.

> We are urged to recognize § 709(b), in the context of the whole
> Act, as a preemptive strike against any attempt to pin liability on
> Conrail under any theory of tort law.  Specifically, the claim is that
> § 709(b) insulates Conrail from common law successor tort
> liability, thereby barring employees of the bankrupt railroads from
> pressing FELA claims against it.

*Reading*, at 1323.   This Court in *Reading* rejected this argument, and thus squarely rejected the

relief that Conrail seeks with its motion.

Conrail wants to distinguish the *Reading* decision by claiming that the Court there did not

consider the issue of whether the claim arose prior to the conveyance date of April 1, 1976.  This

statement is misleading and incorrect.  The *Reading* Court did evaluate pre-conveyance actions

of Conrail, specifically, successor liability for negligent exposure to asbestos which occurred

before conveyance.  Although Conrail's claim was framed in light of now-repealed § 709(b) of

the Rail Act (pertaining to assumption of personal injury claims arising prior to the date of

conveyance), the Court noted:

> Conrail and Amtrak urge the court to go farther and assume
> jurisdiction to determine whether the overall federal regulatory
> scheme embodied in the Rail Act precludes any imposition of
> successor liability.  This court's jurisdiction over provisions of the
> Rail Act, other than those provisions added or amended by NRSA,
> is found in §209(e) of the Rail Act[2].

*Reading*, at 1324 (footnote added).

As such, Conrail's arguments are unfounded.  The underlying lawsuit does not involve

any conflict regarding the conveyance of railroad properties to Conrail and the *Reading* decision

makes clear that the Rail Act does not preclude imposition of successor liability.

III.    THIS COURT DID NOT PREVIOUSLY GRANT A STAY  IN ANY FELA ACTION
        INVOLVING ASBESTOS PENDING IN A STATE COURT

As support for their request for partial stay, Conrail provided the Court with a copy of an

unpublished Memorandum Opinion and Order of this Special Court dated March 24, 1997,

which held that Conrail would not be held liable for a pre-conveyance incident where an

undisclosed underground electrical ductbank was struck by construction workers.   The accident

occurred after Penn Central had conveyed the land to the Commonwealth of Pennsylvania

Department of General Services (DGS) and after its remaining interests were conveyed to

Conrail.  The claims against Conrail were both in successor liability and direct liability.  Conrail

asked this Court to stay the state court action and to adjudicate successor liability.  This Court

---

2 *See* discussion of § 209(e) above.

did issue a stay and found that liability was premised upon common law contract and tort theories, and that there was no successor liability. "Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad." *Consolidated Rail Corporation v. Commonwealth of Pennsylvania Department of General Services, et al.*, Sp.Ct. RRRA, C.A. No. 970RR-01, p.7. (Opinion attached here as Exhibit B.)

This unpublished Memorandum Opinion, which appears never to have been cited in a published decision or otherwise relied upon by another court, is inapposite in view of this Court's decision in *Reading Company. In Reading*, this Court (1) addressed issues virtually identical to those presented here, (2) conducted a careful analysis of asbestos litigation and the problem of latent claims (which cannot be determined until many years after the conveyance of assets and properties to Conrail and long after the bankruptcies of the prior railroads were extinguished), and (3) denied Conrail's request for stay and held that FELA claims involving successor liability are not barred by the Rail Act. Conrail offers no legitimate basis for rejecting this Court's decision in *Reading Company* in favor of the distinguishable unpublished opinion.

## IV.  A STAY OF THE UNDERLYING ACTION IN PHILADELPHIA WOULD BE IMPROPER

The underlying action, pending in Philadelphia, was filed in June of 2005. Discovery is complete and trial is scheduled to commence on October 1, 2007. If this Motion for Partial Stay is granted, Defendants (Representatives of the Decedent's Estate in the underlying action) would be extremely prejudiced. Apart from the expense and burden of defending another action in another State, and the possibility that the case would need to be tried twice (once against defendants other than Conrail, and then again, against Conrail), the delay and emotional burden

of such a delay is incalculable to the family.  They suffered a death of their loved one and are two months from trial.  They wish to proceed and have this matter determined.  Conrail has taken inconsistent positions regarding successor liability.  At times, Conrail has alleged that this Special Court has exclusive jurisdiction over the issue of successor liability.  At other times, it has filed identical motions in the trial court where the underlying action is pending.  Here, Conrail has filed motions on the successor liability issue in multiple venues, but has never alleged that Philadelphia County is not an adequate forum to determine these issues.   In the end, the Pennsylvania courts are the best positioned to determine this issue.   Accordingly, defendants respectfully request that Conrail's Motion for Partial Stay of Proceedings Pending in the Court of Common Pleas of Philadelphia County, Pennsylvania be denied.

IV.    CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Conrail's Motion for Partial Stay of Proceedings Pending in the Court of Common Pleas of Philadelphia County, Pennsylvania.

Respectfully submitted,

Dated: August 20, 2007

/s/ Denis C. Mitchell
Denis C. Mitchell, Bar No. MD26510
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
202-737-7777
dmitchell@steinmitchell.com

Attorneys for Defendants Gerard A. Ritter
And Susan R. Norek, Executors for the Estate of
Gerard H. Ritter, deceased

Of Counsel:
KLINE & SPECTER, P.C.
Lee B. Balefsky, Esquire
Michelle L. Tiger, Esquire
Cheryl P. Jacobs, Esquire
1525 Locust Street. 19th Floor
Philadelphia, PA 19102

Attorneys for Defendants Gerard A. Ritter
And Susan R. Norek, Executors for the
Estate of Gerard H. Ritter, deceased

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2007 the foregoing motion was served electronically and by first class mail on counsel for the plaintiff:

> Laurence Z. Shiekman, Esquire
> Ken Massey, Esquire
> T. Joel Zuercher, Esquire
> PEPPER HAMILTON, LLP
> 3000 Two Logan Square
> Eighteenth and Arch Streets
> Philadelphia, PA 19103-2799
>
> Charles Carpenter, Esquire
> PEPPER HAMILTON, LLP
> 600 Fourteenth Street NW, St. 500
> Washington, DC 20005-2004

/s/ Denis C. Mitchell_____
Denis C. Mitchell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : | |
| | : | |
| Plaintiff, | : | Case 1:07-cv-01370 - RMU |
| | : | |
| v. | : | |
| | : | |
| **GERARD A. RITTER AND SUSAN R. NOREK,** | : | |
| **Executors for the Estate of GERARD H.** | : | |
| **RITTER, deceased** | : | |
| | : | |
| Defendants | : | |

_____

**<u>ORDER</u>**

Upon consideration of plaintiff's motion for a partial stay of proceedings pending in the

Court Of Common Pleas of Philadelphia County, defendants' opposition thereto, and the entire

record in this matter, it is hereby

ORDERED that the motion is DENIED.


Dated: _____


_____
The Honorable Ricardo M. Urbina
United States District Court
 for the District of Columbia


- 1 -

Copies to:

Denis C. Mitchell
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
dmitchell@steinmitchell.com

Lee B. Balefsky, Esquire
Cheryl P. Jacobs, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street. 19th Floor
Philadelphia, PA 19102

Laurence Z. Shiekman, Esquire
Ken Massey, Esquire
T. Joel Zuercher, Esquire
PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Charles Carpenter, Esquire
PEPPER HAMILTON, LLP
600 Fourteenth Street NW, St. 500
Washington, DC 20005-2004

# EXHIBIT

# A

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION



By: Lee B. Balefsky, Esquire
I.D. #25321
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000
Fax: 215-735-0960
Attorney for Plaintiffs

Received via UPS Express
to Roger A. Petersen

GERARD H. RITTER AND ALICE K.        :     COURT OF COMMON PLEAS
RITTER, H/W                          :     PHILADELPHIA COUNTY
908 SOUTH WEBSTER AVENUE             :
SCRANTON, PA 18505                   :
                    Plaintiffs        :     June 2005
                                     :              TERM 2005
        vs.                          :     NO.
                                     :     ASBESTOS CASE    060467
GARLOCK, INC., ET AL.                :     JURY TRIAL DEMANDED
                    Defendants.       :

## CIVIL ACTION COMPLAINT

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Asbestos

Litigation in Philadelphia County Court of Common Pleas, filed as of October Term 1986, No. 8610-

0001. Pursuant to an Order dated July 30, 1986, and signed by the Honorable Richard B. Klein, the

following Short Form Complaint is utilized in this asbestos action.

1.      This Complaint involves the claims of the following persons:

        a.      Plaintiff: Gerard H. Ritter
                Date of Birth: 11/4/21
                Social Security: 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

        b.      Plaintiff-Wife: Alice K. Ritter
                Date of Birth: 3/20/28
                Social Security: 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

2.      The Defendants are those companies listed in the caption.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

3.    Plaintiffs hereby incorporate by reference the following Counts from the Master Long

Form Complaint:  Counts I, II, III, IV, VIII and X.

4.    Plaintiff's asbestos employment history is as follows:

     a.    3/41 to 8/42
        12/45 to 1960
        Delaware Lackawanna and Western Railroad
        Scranton, PA
        Apprentice machinist, journeyman, air brake inspector

     b.    1960-1967
        1971-1976
        Erie Lackawanna Railroad
        Jersey City, NJ
        Scranton, PA
        Hornell, NY
        Air brake inspector

     c.    Consolidated Rail Corporation
        Scranton, PA
        1976-1981
        Air brake inspector

5.    Plaintiff was diagnosed on or about March 8, 2005, as having mesothelioma as a

result of his exposure to asbestos.

6.    Plaintiff smoked less than one pack of cigarettes per day from approximately 1942

to 1955.

7.    Plaintiff's wages during his last full year of employment were:

     a. To be supplied.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

    8.    Plaintiff's dependents are as follows:

        a.  Alice K. Ritter - Wife

                        KLINE & SPECTER, P.C.

                        BY: _____
                          LEE B. BALEFSKY, ESQUIRE
                          Attorney for Plaintiffs

**VERIFICATION**

We, GERARD H. RITTER and ALICE K. RITTER, being duly sworn according to law, depose and state:

      1.  We are the plaintiffs in this action;

      2.  We verify that the statements made in the foregoing Complaint are true and correct to the best of our knowledge, information and belief; and

      3.  We understand that the statements made in said Complaint are subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.


_____
GERARD H. RITTER


_____
ALICE K. RITTER


DATED: _05 - 20 - 05_

# EXHIBIT

# B

03/24/97  MON 16:47 FAX 202 273 0479      ADMIN/SERVICE                    ☒002
MAR-24-1997  11:56          JUDGE WEINER                              P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION       :
                                    :
                                    :
                                    :        Special Court
        v.                          :        Regional Rail Act
                                    :        C.A. NO. 97-RR-01[1]
                                    :
                                    :
COMMONWEALTH OF PENNSYLVANIA        :
DEPARTMENT OF GENERAL SERVICES      :
and THE FRANK BRISCOE CO., INC.     :                        **FILED**

WEINER, J.[2]                                  March 24, 1997 MAR 24 1997

                                                NANCY MAYER-WHITTINGTON, CLERK
                                                U.S. DISTRICT COURT
                __MEMORANDUM OPINION AND ORDER__

        Consolidated Rail Corporation (Conrail) brought this
action for declaratory relief against the Commonwealth of Pennsyl-
vania Department of General Services (DGS) and The Frank Briscoe
Company, Inc. (Briscoe), seeking a partial stay of proceedings in
the Court of Common Pleas of Dauphin County.  Conrail seeks a
declaration that the subject matter of the underlying suit is
partly within the exclusive jurisdiction of this court[3], and that

--------------------------------------------------

[1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

[2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

[3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

it has no liability as a successor or assignee of the Penn Central
Corporation. Also before the court is a motion by the defendants
to dismiss. This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[6] For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. $\S$ 719(e)(2). This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1975, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed. At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion. The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center. Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

---

[6] The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

2

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
> . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.

Schedule E to the Bill of Sale provided:
> Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

Loftus Division of Eichleay Engineering (Loftus). DGS filed a second action in 1989 in which it named eight defendants; again Conrail was not one of them. It was again joined by Loftus. In 1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed presence of an underground electrical ductbank, which was struck by construction workers driving piles for the new Convention Center. The ductbank was struck after Penn Central had conveyed the land to DGS, and after its remaining interests were conveyed to Conrail. The claims against Conrail seek to hold it liable both as a successor to Penn Central, as well as for independent, post-conveyance acts of its agents who were on site during the construction. Successor liability is premised upon Penn Central's pre-conveyance statements to DGS that all utilities had been abandoned, Penn Central's failure to de-energize and relocate the power line, and its failure to include the power line on construction drawings. Direct liability is premised upon Conrail's unreasonable delay in moving the power line after its accidental discovery, as well as the fact that its on site agent failed to warn of the existence of the power line.

Reduced to its essence, Conrail argues that since the successor liability issues presented in the Dauphin County action are within the exclusive jurisdiction of this court, the Dauphin County action must be stayed. Pursuant to Section 209(g) of the Rail Act, this court may stay or enjoin any action or proceeding in any state or federal court, other than the United States Supreme

4

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.   45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).  Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

        Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

        It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

5

court's conveyance order, or the conveyance documents; and is within our jurisdiction. While both sides point to our decisions in Penn Central v. United States, supra and Consolidated Rail Corp. v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as support for their jurisdictional arguments, we find this action is far more simple than the situations presented there. In both Penn Central and Consolidated Rail, we were faced with the interplay of the Rail Act and a second statutory scheme, the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. §9601, et seq. Finding that, in enacting CERCLA, Congress intended its liability provisions to apply notwithstanding any other provision of law, we concluded that CERCLA was an exception to the fresh start policy embodied in the Rail Act. While we refused to completely exonerate Conrail from post-conveyance CERCLA liability, we reconciled the two statutory schemes by making clear that pursuant to the Rail Act, liability for pre-conveyance environmental contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme at issue. As we read the underlying pleadings, liability is premised upon common law contract and tort theories, seeking, inter alia, to hold Conrail responsible as corporate successor for Penn Central's acts and omissions. The fresh start policy embodied in the Rail Act, and incorporated into the conveyancing documents, creates a bright line date upon which the liability of Penn Central ended and the liability of Conrail began. Congress mandated that

6

there be no successor liability hindering the future financial well being of the newly created Conrail.  Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished.  However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it.  As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

03/24/97  MON 16:49 FAX 202 273 0479        ADMIN/SERVICE                    ☒009

MAR-24-1997  12:00        JUDGE WEINER                                    P.08/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION      :
                                   :
                                   :
                                   :
                                   :     Special Court
            v.                     :     Regional Rail Act
                                   :.    C.A. NO. 97-RR-01
                                   :
                                   :
COMMONWEALTH OF PENNSYLVANIA        :
DEPARTMENT OF GENERAL SERVICES     :     **FILED**
and THE FRANK BRISCOE CO., INC.    :

                                         MAR 2 4 1997

            JUDGMENT ORDER               NANCY MAYER-WHITTINGTON, CLERK
                                         U.S. DISTRICT COURT

        The motion to dismiss defendants Commonwealth of
Pennsylvania Department of General Services and The Frank Briscoe
Co., Inc. is DENIED.

        The motion of plaintiff Consolidated Rail Corporation to
stay is GRANTED.

        Judgment on the merits is ENTERED in favor of plaintiff
Consolidated Rail Corporation and against defendants Commonwealth
of Pennsylvania Department of General Services and The Frank
Briscoe Co., Inc.

        The court DECLARES that pursuant to the conveyance orders
issued by this court and the conveyance documents executed
thereunder, there is no successor liability of Consolidated Rail
Corporation for the acts and omissions of the Penn Central
Transportation Company for the period prior to April 1, 1976 as
asserted in the pleadings filed in the consolidated actions

8

03/24/97 MON 16:49 FAX 202 273 0479     ADMIN/SERVICE                    ☒010
MAR-24-1997 12:01          JUDGE WEINER                              P.09/09

captioned <u>Commonwealth of Pennsylvania, Department of General Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

*C. Charles R Weiner*

CHARLES R. WEINER

9